THE CONTINENTAL NATIONAL BANK of New York, Respondent,
*v.* CLARK BELL, Impleaded, etc., Appellant.

Defendant C. being indebted to plaintiff for rent due under a lease of certain rooms in plaintiff's building, delivered to it as security for rent due or to grow due a note executed by defendant B. for the accommodation of C., and indorsed by the latter. Before the expiration of the term plaintiff was notified that the note was an accommodation note. At the time of such delivery there had been no negotiations between plaintiff and C. for a renewal of the lease or for a lease of other rooms. In an action upon the note, *held*, that, assuming there was no wrongful delivery of the note by C., plaintiff could not enforce it against B. for any amount beyond that for which it was pledged, which was the rent due and to grow due under the existing lease; and so, that a claim to recover the amount of rent due for other rooms subsequently leased to C. was untenable.

*It seems* that if the note was wrongfully diverted by C. plaintiff was not entitled to enforce it to collect rent due at the time it was pledged.

(Argued October 29, 1890; decided December 2, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 23, 1888, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought upon a promissory note dated February 6, 1885, made by the defendant Clark Bell, for $1,584.21, payable sixty days after date to the order of the defendant Hiram B. Crosby. Defendant Bell alleged that said note was given without any consideration, and for the accommodation of Crosby, the purpose being to enable Crosby to purchase certain shares of stock in a company, but was not used by him for such purpose.

The note, with two others, was delivered to plaintiff as security for rent, as stated in the opinion. Plaintiff alleged that thereafter Crosby rented of it certain other rooms, and claimed to hold the note as security for the rent due thereon.

*Clark Bell* appellant in person. The judgment for plaintiff should be set aside from a consideration of "the nature of

the case." (*Saltus* v. *Everett*, 20 Wend. 267.)   The plaintiff's
contention that there was no restriction put upon the use of
the note is unfounded.   (*Neeson* v. *City of Troy*, 29 Hun,
173.)   In a conflict between a *bona fide* holder without notice,
and the real owner, the former has an inferior and certainly
not a higher equity.   (*Saltus* v. *Everett*, 20 Wend. 267 ; *Dun-
can* v. *Gosche*, 20 How. Pr. 344 ; *C. Bank* v. *Weiss*, 3 S. W.
Rep. 299.)   The general provision that an unwritten lease of
real property is good for one year must be construed by the
special statute referring to leases within the city of New York.
(2 R. S. [7th ed.] chap. 1, § 1.)   The contention of the plain-
tiff that it held Bell's note as collateral security for an ante-
cedent debt, and could, therefore, recover on it, is fallacious.
(*Wardell* v. *Howell*, 9 Wend. 170 ; *Spence* v. *Ballou*, 18
N. Y. 331 ; *Schepp* v. *Carpenter*, 51 id. 602 ; Daniels on Neg.
Inst. § 827.)   The plaintiff's contention that no fraudulent
diversion of Bell's note was proved, because the maker had no
interest in the avails, is unfounded.   (Daniels on Neg. Inst.
§ 794.)   If notice or knowledge of the transferor's defective
title be express, it will destroy the purchaser's better position.
(Daniels on Neg. Inst. §§ 795, 799 ; Story on Prom. Notes,
§ 197.)   The action of Bell against the bank should have been
determined before the present action was brought.   (*Groshon*
v. *Lyon*, 16 Barb. 461 ; *Travis* v. *Myers*, 67 N. Y. 542 ;
*Schuehle* v. *Reiman*, 86 id. 270.)

*John L. Cadwalader* for respondent.   Upon appeal from a
judgment of the General Term affirming a judgment entered
upon the report of a referee, this court will look into the evi-
dence only for the purpose of ascertaining whether there is
any evidence tending to support the facts found.   If there is
any such evidence, the findings are conclusive.   (*Reynolds* v.
*Robinson*, 82 N. Y. 103 ; *Derham* v. *Lee*, 87 id. 446 ; *Damb-
man* v. *Schulting*, 90 id. 309.)   The defendants entirely
failed to prove that there was any restriction put upon the
use of the note or any fraudulent diversion.   The burden
was upon them to prove the facts; they failed; the referee

found against them, and no court could set aside his findings upon that point, on such evidence as appears in this case. (*C. Bank* v. *Townsend*, 87 N. Y. 8; *Comstock* v. *Hier*, 73 id. 267; *Tinsdale* v. *Murray*, 9 Daly, 446; *N. Bank* v. *Wells*, 79 N. Y. 498; Daniels on Neg. Inst. §§ 792–794.) The referee's findings, that the note in suit, with others, was pledged by Crosby, the payee, to the plaintiff before maturity, and without notice of anything affecting its negotiable character, as collateral security for rent then due by Crosby, and which should become due; that at the time of such pledge, Crosby owed $1,500, and that the plaintiff upon the security of those notes, allowed him to remain on the premises until almost $1,000 more rent became due, were amply supported by the evidence. (*Wheeler* v. *Newbold*, 16 N. Y. 392; Jones on Pledges, 664, 674, 676–680; Daniels on Neg. Inst. §§ 792–794; *Gould* v. *Segree*, 5 Duer, 260; *Schufelt* v. *Gustin*, 2 E. D. Smith, 57; *Mack* v. *Burke*, 5 Hun, 12; *Schuyler* v. *Smith*, 51 N. Y. 307; McAdam on Landl. & Ten. 317.) The defense of former action pending failed entirely. (*Darwin* v. *Brown*, 79 N. Y. 390; *Haric* v. *Baker*, 5 id. 357; *Geery* v. *Webster*, 11 Hun, 428; *Schuch* v. *Remsen*, 86 N. Y. 270; *N. E. S. Co.* v. *Bliven*, 3 Blatchf. 240; *Bronson* v. *Earl*, 17 Johns. 65; *Wallace* v. *Castle*, 68 N. Y. 370.) A tenant's obligation to pay rent may be apportioned by agreement with the landlord. (*Nellis* v. *Lathrop*, 22 Wend. 121; *Van Rensselaer* v. *Chadwick*, 22 N. Y. 32.)

Andrews, J. I am unable to find in the record any evidence to justify a conclusion that the note of the defendant was pledged by Crosby to secure rent which might accrue to the plaintiff subsequent to May 1, 1885, or that the plaintiff ever acquired any right from Crosby to hold the note as security therefor. The only arrangement between Crosby and the bank in respect to the note, was made some time in February, 1885, and whatever right or interest the bank acquired therein depended upon the arrangement then made. Crosby was indebted to the bank for three quarters' rent past due,

amounting to $1,500, and another quarter's rent of $500, would become due May 1, 1885, on which day the lease, by its terms, was to expire. The bank had been unable to collect the rent due. This was the situation when the three notes, including the note of the defendant, were left by Crosby with the bank as security for the rent due, and to accrue under the lease, the bank having previously refused to discount them. The claim now made by the bank is that the notes having been deposited to secure the rent due and to become due, it held them as security not only for the rent accrued and to accrue on the existing lease, but also for any rent which might become due from Crosby on any new letting of the same or other rooms thereafter at any time made. This is, we think, an inadmissible construction of the transaction, in view of the circumstances. There had been at the time no treaty between the bank and Crosby, either for the renewal of the existing lease or for a lease of other rooms. There is no evidence that either party then contemplated that the tenancy would continue beyond the term of the existing lease. It would be quite extraordinary under such circumstances that either party should undertake to provide for such a contingency. The general evidence of the president and cashier of the bank that the notes were left as security for rent due and to become due, fairly interpreted, refers to the rent past due on the existing lease, and to become due thereon. That this was what the bank understood seems to be placed beyond question by the statement of the president in an affidavit made by him and admitted as evidence generally on the trial of the present action, wherein, after referring to this transaction, and to the fact that Crosby was then indebted to the bank in the sum of $1,500 for rent due, and that the bank threatened to turn him out unless the rent was paid, he continues, "He" (Crosby) "thereupon on or about February 9, 1885, brought to the bank the note on which this suit was founded, and the other notes above referred to, and indorsed them in blank, and delivered them to the bank as *security for the rent due and*

*to become due under the said lease,* and in consideration thereof, the bank agreed not to turn him out immediately, but to allow him further time to pay up the said rent and to continue in the premises." The General Term has found, contrary to the finding of the referee, and we think justly, that the note was an accommodation note, and this was known to the bank soon after it received it. Assuming that there was no wrongful diversion of the note by Crosby, nevertheless the bank cannot enforce it against the accommodation maker for any amount beyond that for which it was pledged, nor for a debt for which it was not pledged. In respect of any excess, it stands in the situation of Crosby, who clearly could not enforce payment. (*Gordon* v. *Boppe,* 55 N. Y. 665; *Atlas Bank* v. *Doyle,* 9 R. I. 76; *Stoddard* v. *Kimball,* 6 Cush. 469.) By the judgment in this case the bank was permitted to recover on this note as though it was pledged as well for the rent on the original lease as for that accruing on the new lease made in March. This was, I think, erroneous. And the point that the note was not pledged for the rent on the subsequent lease was specifically made in the answer, and is, I think, sufficiently raised by exception.

There is another ground on which the judgment is assailed and that is that the note was wrongfully diverted by Crosby from the purpose designed, and in violation of a restriction imposed upon its use by Bell when the note was made. This, if true, would, under the decisions in this state, prevent the bank from enforcing the note as against Bell, to collect the portion of the rent which was past due when the note was pledged. (*Coddington* v. *Bay,* 20 Johns. 636; *Stalker* v. *M'Donald,* 6 Hill, 93; *Grocers' Bank* v. *Penfield,* 69 N. Y. 502.) The evidence on the part of the defendant tends to show that Bell gave the note upon the representation of Crosby that he would procure the money on it and use the proceeds in purchasing the outstanding shares in a company known as the Albemarle Company, for the purchase of which shares he had an option which, when acquired, would, as he claimed, enable him immediately to complete the sale of the marl beds

and property of the company to a Paris syndicate for a large sum of money, out of which, when received, which he alleged would be in a very short time, he promised to pay Bell a debt which Crosby owed him of several thousand dollars. The findings of the referee in respect to this defense are quite vague and somewhat inconsistent. In his original report he finds that Bell made and delivered the note to Crosby, "having made no special restriction as to its use, although expecting the same was to be used in some transactions in which said Crosby was interested." In his special findings he finds: "That the said Crosby represented to said Bell, among other things, that he required certain moneys for the purpose of making certain purchases of stock in the Albemarle Company, in which he was largely interested, and he assured the said Bell that it was his intention to have the said note discounted and apply the proceeds thereof to such purpose;" also "that Mr. Crosby promised said Bell that out of the avails received from the Paris syndicate, which he would be able to consummate on the discounting of the note, Mr. Crosby would repay to Mr. Bell considerable sums of money which Mr. Bell had previously lent him;" and again, "that Mr. Crosby had no right to place it (note) with the bank, as the note had been given for an altogether different purpose and object."

Whether the arrangement between Crosby and Bell, as stated by the latter, was of such a character as to make its violation by Crosby and the use of the note to secure past due rent, a diversion of the paper so as to afford a defense to Bell as against the bank, is certainly not free from doubt. Bell was to have no interest in the proceeds of the note, nor in the stock to be purchased, nor in the proceeds of the contemplated sale to the Paris syndicate. His interest was still more remote. If the transaction should be carried through, Crosby would be in funds to pay Bell what he owed him, and he promised that out of them, when received, he would pay the debt. It is unnecessary now to decide the point. We refer to a few of the cases bearing on the subject. (*Wardell* v. *Howell*, 9 Wend. 170; *Mohawk Bank* v. *Corey*,

1 Hill, 513 ; *Powell* v. *Waters,* 17 J. R. 176 ; *Bank of Rutland* v. *Buck,* 5 Wend. 66.)

We think there should be a new trial, on which the questions involved may be more clearly presented.

The judgments of the court below should be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.