### THE WINDSOR TRUST COMPANY *vs.* MAZZALEL CHAMPIGNY ET ALS.

First Judicial District, Hartford, January Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND JENNINGS, Js.

When a note and mortgage upon real estate are given as collateral
security for an existing indebtedness, the mortgagee in a sub-
sequent action of foreclosure is entitled to a judgment for so
much of that indebtedness, not exceeding the amount of the
mortgage note, as may be in existence at the time of trial, and
it is of no consequence that the form of the indebtedness has
changed since the date of the mortgage. It may consist of
renewals of, or substitutions for, the note or notes which evi-
denced the indebtedness at the time when the mortgage was made
or, as in the present case, of a note, or the renewal thereof, upon
which the liability of the mortgagor is that of an indorser;
and where the indebtedness has increased since the date of the
mortgage and a note, greatly in excess of the face of the mort-
gage note, has been given for the entire amount, the mortgagee

is entitled to trace the original indebtedness into the larger note and enforce his security to that extent.

In addition to a mortgage upon his tobacco farm, dated in 1922, the defendant C executed to the plaintiff a first mortgage upon his crops for the years 1922, 1923 and 1924, and to the other defendants second and third mortgages upon his crops for the last two of these years. In order to fulfil his contracts to deliver his crops to the Connecticut Valley Tobacco Association, he delivered to each crop mortgagee in each of these years, an order drawn upon the Association requesting it to pay to each mortgagee the proceeds of the crop up to the amount of the several orders. The plaintiff collected considerable sums upon these orders and, in the present action to foreclose its real-estate mortgage, the other creditors claimed that it should have applied each of these payments upon the indebtedness owed to it by C at the time when he made the mortgage upon the crop from the proceeds of which the payment was made and that, had such a course been pursued, the indebtedness secured by the real-estate mortgage would have been discharged in whole or in part. *Held* that the finding was inadequate to enable this court to pass fully upon this phase of the case; but that *it would seem* that the claim was valid in so far as the payments made to the plaintiff from the 1923 and 1924 crops were concerned, provided the plaintiff knew, or should have known, of the orders upon the same crops held by the other creditors.

Whether the liens of the crop mortgages were transferred to the proceeds of the orders substituted for them, or whether such substitution terminated the liens, even though no formal releases were executed, would depend upon the circumstances surrounding the transfer and the intent of the parties.

It is a general rule that payments made upon collateral security are to be applied in reduction of the indebtedness secured; and the creditor has no right to collect more upon the security than the amount of the debt secured.

To what extent the rule that a creditor is bound to apply payments in accordance with the known intentions of his debtor, would affect the situation in the present case, if all the facts appeared of record, *quære*.

The creditors invoked the principle, advanced in other jurisdictions, that where rights under a mechanic's lien are involved, an owner making payments to a subcontractor is entitled to have them applied, even in the absence of direction from the contractor, upon such charges as might be made the basis of a lien. *Held* that this principle, which is by no means unquestioned, had no application to the issues in the present case.

Whether a payment derived from a particular source or fund must be credited to the release of that source or fund, *quære*.

Argued January 11th—decided March 2d, 1927.

ACTION to foreclose two mortgages of real estate, brought to the Superior Court in Hartford County and tried to the court, *Wolfe, J.*; judgment for the plaintiff, and appeal by the defendants The Mapes Formula and Peruvian Guano Company and William A. Foley, Trustee. *Error and new trial ordered.*

*Terry J. Chapin,* for the appellants (defendants The Mapes Formula and Peruvian Guano Company and William A. Foley, Trustee).

*Stewart N. Dunning* and *Vine R. Parmelee,* for the appellee (plaintiff).

MALTBIE, J. The plaintiff in this action is seeking the foreclosure of two mortgages upon a certain farm, executed and delivered to it by the defendant Champigny; the first was made January 18th, 1921, and secured an indebtedness of Champigny to the plaintiff amounting to $4,000 with interest, and no question is made as to the right of the plaintiff to foreclose this mortgage or as to the amount due upon it. The other mortgage was made June 30th, 1922, and stated the amount of the debt secured to be $2,500 with interest. The trial court found that the entire amount of this debt was due and unpaid and decreed a foreclosure. The issues before us concern the correctness of the decision in regard to the foreclosure of this mortgage, the appellants being the trustee of Champigny's bankrupt estate and the Mapes Formula and Peruvian Guano Company, which holds a mortgage upon the real estate subsequent to those of the plaintiff.

On June 30th, 1922, Champigny was indebted to the

plaintiff in the sum of $2,565, and the mortgage in question was given to secure that indebtedness to the amount of $2,500. It did not directly secure the debt then owed the plaintiff by Champigny but became collateral to it; *First National Bank v. National Grain Corporation,* 103 Conn. 657, 665, 131 Atl. 404; so long as that indebtedness remained, in whole or in part, the plaintiff was entitled to a decree of foreclosure of the mortgage for so much of it as was owing to the plaintiff, not exceeding the amount due upon the $2,500-note; and the fact that the notes originally given to evidence the indebtedness secured had been replaced by other notes would not matter, so long as the sum found to be due on the foreclosure was the original debt or a part thereof. *City National Bank v. Stoeckel,* 103 Conn. 732, 741, 132 Atl. 20.

The finding states that at the time of trial Champigny was indebted to the plaintiff on three notes which it describes. One of these was a note made by one Thrall, payable to Champigny, and by him indorsed to the plaintiff. This note was found by the trial court to be the successor by various renewals of a note which was made by Thrall payable to Champigny and indorsed by him to the plaintiff, which was in effect when the mortgage was given, and the amount due upon which, $1,065, formed a part of the sum of $2,565 then owing to the plaintiff. The appellant contends that the description of the debt in the mortgage in suit is not adequate to include the liability of Champigny as indorser of this note. This contention overlooks the nature of the mortgage before us; it directly secured the debt evidenced by the note for $2,500 described in it, and only indirectly and collaterally the underlying and pre-existing indebtedness of Champigny to the plaintiff; so long as that indebtedness, at the time the mortgage was given, equaled or ex-

ceeded the amount of the note, it is of no concern to the appellant or subsequent incumbrancers how that indebtedness was made up. *First National Bank* v. *National Grain Corporation,* 103 Conn. 657, 664, 131 Atl. 404. The plaintiff was entitled to a foreclosure of the mortgage so far as necessary to enforce payment of the amount owed to it by Champigny on account of his indorsement of this note.

Of the other two notes representing indebtedness of Champigny to the plaintiff at the time of the trial, one was dated February 16th, 1925, and was for the sum of $4,326.83, with interest, and the other was dated January 2d, 1925, and was for the sum of $140, with interest. The trial court has not found whether the debt evidenced by these two notes represented, in whole or part, the debt originally secured by the mortgage, nor can we determine that from the record. Both notes are dated long after the time the mortgage was given and one of them is for an amount largely in excess of the note secured by it and of the then existing indebtedness of Champigny to the plaintiff. Still, a full hearing might disclose that the note for $140 represented a part of the original debt, or that that debt or a part thereof can be traced into the note for $4,326.83, as a still existing indebtedness, so that the plaintiff would be entitled to foreclose the mortgage to enforce payment of it. *Greist* v. *Gowdy,* 81 Conn. 351, 354, 71 Atl. 555; *Port* v. *Robbins,* 35 Iowa, 208; *Joyner* v. *Stancill,* 108 N. C. 153, 12 S. E. 912; *Hoy* v. *Biladeau,* 110 Ore. 591, 223 Pac. 241; 2 Jones on Mortgages (7th Ed.) §§ 926, 930. In so far as the judgment provides for the foreclosure of the second mortgage for the entire amount of the note described in it, the record does not sustain it and the cause must be remanded for further proceedings.

This suggests the consideration of certain further

contentions made by the appellant. During the years 1922, 1923 and 1924, Champigny raised crops of tobacco upon the farm covered by the mortgages in suit, and during these years had an agreement with the Connecticut Valley Tobacco Association for the delivery of his crops of tobacco to it and the handling and marketing of them by it. In 1922, in addition to the mortgage held by it upon the farm, Champigny executed and delivered to the plaintiff a mortgage upon the crop of tobacco raised by him that year and then hanging in a shed; in September, 1923, he executed and delivered to the plaintiff a similar mortgage upon the crop raised by him that year, and he thereafter executed and delivered second and third mortgages upon that crop to Charles E. Fowler and the appellant the Mapes Company, respectively; in 1924, he executed and delivered to the plaintiff a similar mortgage upon the crop raised by him that year, and thereafter executed and delivered second and third mortgages upon that crop to the Mapes Company and to Terry J. Chapin as trustee for two creditors. The finding states that in each of these years, when it came time to deliver the tobacco to the Tobacco Association, in order to allow it to take delivery, handle and sell the crop, Champigny executed and delivered to each mortgagee, in substitution for its mortgage, an order drawn upon the Association, requesting it to pay to that mortgagee any moneys, up to the amount stated in the order, due or to become due to him on account of the crop of tobacco raised that year. The plaintiff received considerable sums of money at various times on account of the orders so held by it. The appellant claims that, as each payment was made by the Association to the plaintiff, it ought to have been credited upon the indebtedness owed the plaintiff by Champigny at the time when he made the mortgage upon

the crop from the proceeds of which the payment was made, and that, had such a course been pursued, it would have resulted in the payment, in whole or in part, of the indebtedness secured by the mortgage in suit.

The facts found, which were presented to the trial court in the form of an agreed statement, do not permit an adequate consideration of this contention, and all that can be done is to make certain suggestions which are likely to prove helpful on a retrial. The first of these is that the application of the payments made to the plaintiff upon the orders would be of no consequence in this action unless it is made to appear that the indebtedness to secure which the mortgage in suit was given can be trsced into the indebtedness on account of which the orders were given. The finding states the amount of the indebtedness owed to the plaintiff by Champigny when each of the mortgages was given and, in each instance, that his liability upon the Thrall note formed a part of that indebtedness, without, however, stating the amount of that liability. This falls far short of laying the necessary basis for the appellant's contention.

Again, the finding fairly suggests, although it does not expressly state, that each of the crop mortgages given to the plaintiff was of the same nature as the mortgage upon the real estate we have discussed above, that is, it was given as collateral security for a pre-existing indebtedness, with the result that the satisfaction of that indebtedness would discharge the mortgage; but the finding does not state the circumstances surrounding the substitution of the orders for these mortgages; what, for instance, was the agreement between the plaintiff and Champigny, what the understanding, if any, among all those holding crop mortgages, what knowledge, if any, the plaintiff

had of the crop mortgages subsequent to its own, and like facts; yet these might have a very important bearing upon the equities between the parties. The appellants contend that the lien on each of the crop mortgages was not terminated but merely transferred to the proceeds of the order given in substitution for it; in a strict sense that could hardly be, in view of the fact that the sole means of enforcing such a mortgage is by sale of the mortgaged property under order of court; General Statutes, § 5206; but, no doubt, there might be such a general agreement among the parties interested as would have the effect of impressing a lien upon the proceeds of the order. *Ketcham* v. *St. Louis,* 101 U. S. 306, 316. On the other hand, it is entirely consonant with the facts found that the intent of the parties was to put an end to the liens of the mortgages, and if that was so, it would be effective, though no formal releases were executed. 2 Jones on Mortgages (7th Ed.) § 926.

Again, the finding suggests, though it does not state, that each of the orders given to the plaintiff was itself collateral security, either, in strict substitution for the crop mortgage it succeeded, for the indebtedness existing when it was given, or for that existing when the order was delivered to the plaintiff. See *Robinson* v. *Security Trust Co.,* 94 Conn. 94, 116, 108 Atl. 665. The general rule of law is that payments made upon collateral security held by a creditor are to be applied to discharge the indebtedness secured; *Continental National Bank* v. *Bell,* 125 N. Y. 38, 25 N. E. 1070; *Armstrong* v. *McLean,* 153 N. Y. 490, 44 N. E. 912; *First National Bank* v. *Finck,* 100 Wis. 446, 76 N. W. 608; Jones on Collateral Securities (3d Ed.) §§ 550, 551; and the creditor has no right to collect more upon the security than the amount of the debt secured. *Continental Credit Co.* v. *Ely,* 91 Conn. 553, 562, 100

Atl. 434. The appellant trustee in bankruptcy, would no doubt occupy the same position as did Champigny with reference to a right to invoke this rule; and how far Champigny could do so would depend upon circumstances not found. *Boyd & Co.* v. *Jones & Pope,* 96 Ala. 305, 308, 11 So. 405. The appellant the Mapes Company, had neither a mortgage upon the 1922 crop nor an order upon the Association payable from its proceeds, and it would have no ground to object to any application of the payments made from those proceeds which Champigny might authorize; the fact that an application to the indebtedness secured by the order might result in reducing the amount due upon the mortgage in suit and so improve the position of the company with reference to the mortgage it holds upon the real estate, would hardly establish an equity in its favor which would defeat such an application by the plaintiff, under authority of Champigny, as would enable it to realize the greatest amount upon the total indebtedness owed to it by him. *Stamford Bank* v. *Benedict,* 15 Conn. 437, 444; *Gordon* v. *Hobart,* 2 Story (U. S.) 243, 264, 10 Fed. Cas. 787, 794; *Wyandotte Coal & Lime Co.* v. *Wyandotte Paving & Construction Co.,* 97 Kan. 203, 154 Pac. 1012; *Coles* v. *Withers,* 74 Va. (33 Gratt.) 186, 203. The Mapes Company would, however, by reason of the orders upon the Association for a portion of the proceeds of the 1923 and 1924 crops held by it, be entitled to demand that the plaintiff, at least if it knew or might have known of them, apply payments made to it from the proceeds of those crops to the debts secured by the orders which it held; *Illinois Trust & Savings Bank* v. *Stewart Lumber Co.,* 119 Wis. 54, 74, 94 N. W. 777; and as between that portion of the indebtedness secured by each order which represents the original indebtedness at the time the mortgage in suit was

given, and the balance of the indebtedness secured by the order, equity would apply pro rata the payments received by reason of it. *Blackstone Bank* v. *Hill,* 27 Mass. (10 Pick.) 128, 133; *White* v. *Trumbull,* 15 N. J. L. 314, 318; *Coles* v. *Withers,* 74 Va. (33 Gratt.) 186, 204.

The appellants strongly press upon us certain doctrines as to the application of payments made to a creditor without express instructions as to their disposition. It might well be that Champigny intended that the proceeds of each of the orders should be applied to discharge the debt secured by it, and that the circumstances were such that the plaintiff ought reasonably to have understood that intent; if that were so, the plaintiff was, in the first instance, under an obligation to make such an application; *Dulles* v. *De Forest,* 19 Conn. 190; *Cavanaugh* v. *Marble,* 80 Conn. 389, 391, 68 Atl. 853; but whether or not that was so, and whether or not subsequent events worked a change in the situation, must be for the trial court to determine. The appellants also cite certain decisions involving rights under mechanic's liens in which an owner of land paying money to a subcontractor has been held to be entitled to have the payment applied, even in the absence of direction from the contractor, upon such charges as might be made the basis of a lien by the subcontractor; the principle advanced in these decisions is by no means unquestioned; 21 R. C. L. 111; note, L. R. A. 1916D, 1254; and obviously it has no application in this case upon the issues before us. The appellants also invoke a doctrine to the effect, broadly stated, that where a payment is derived from a particular source or fund it should be credited to the release of that source or fund. With reference to the payments made from the proceeds of the 1922

crop, the position of the Mapes Company, as we have already outlined it, would hardly seem to afford a ground which would entitle it to invoke the principle. For the rest, the careful examination and, perhaps, limitation of the doctrine which would be necessary before we could adopt it, makes it inadvisable to give it consideration until we have before us a definite situation of fact by which to test it.

Before further proceedings are had, the appellants should file pleadings proper to present the issues they desire to raise.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.