[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter involves certain post-judgment disputes between the parties arising from a judgment of absolute divorce entered in a Maryland court on November 2, 1988 (the "Decree") and the parties' separation agreement underlying said Decree (the "Separation Agreement"). The Decree was duly filed with this Court on August 29, 1996 pursuant to Connecticut General Statutes (C.G.S.) § 46b-70 et seq.
The issues before the Court are as follows:
1. The Plaintiff mother's motion for contempt alleging that the Defendant father has failed to:
a. make child support payments as required by the CT Page 15146 Decree;
b. pay unreimbursed medical and dental expenses incurred by or on behalf of the minor children as required by the Decree;
c. submit to her a copy of his wage records in accordance with the Decree for the purpose of calculating automatic increases in child support required pursuant thereto;
2. Plaintiff's motion for modification seeking an increase in child support in accordance with the automatic step-up provisions contained in the Decree;
3. Defendant's motions for compliance and contempt alleging the Plaintiff's failure to place certain funds into accounts for each child under the Uniform Gifts to Minors Act with himself designated as the sole trustee of said accounts; and
4. The Defendant's motion for modification seeking a change in his access schedule with the minor children.[1]
The Court, having reviewed all of the evidence and considered the arguments of counsel, shall address the issues in the order outlined above.
 A. Plaintiff's Motion for Contempt
1. Alleged arrearages based upon the original child supportorders
The Decree and Separation Agreement provide, inter alia, that the Defendant is to pay to the Plaintiff child support in the amount of $400.00 per month per child (for a total of $800.00 per month). The Plaintiff now claims that the Defendant has failed to make all of the required child support payments. An analysis of Plaintiff's claim is complicated for a number of reasons. First, it appears that the Plaintiff, prior to this time, has never brought any enforcement proceedings against the Defendant and, therefore, the delinquencies which she now alleges span a period of approximately ten years. Second, the Defendant's payments have been irregular in time and amount (hence complicating a re-creation of the history of his payments). Finally, the parties, between the years 1991 and 1994, entered into a landlord/tenant relationship pursuant to which the Defendant was to make monthly payments of rent to the Plaintiff. This resulted in confusion CT Page 15147 when the Defendant sent to the Plaintiff checks which commingled these obligations or, alternatively, checks which were insufficient in amount to cover both obligations.
Having reviewed all of the evidence, the Court does not find the Defendant in contempt with respect to the monthly child support payments due under the original terms of the Decree. The Court makes this finding for a number of reasons. First, the Court is not satisfied that the Plaintiff has sustained her burden of demonstrating that the Defendant is delinquent and, if so, the amount of any delinquency which may exist. This is evidenced, for example, by Plaintiff's Exhibit 3, a document prepared by the Plaintiff purporting to reflect payments which she claims not to have received. The certainty of Plaintiff's recollection, however, is undermined by the fact that many of the amounts which she reflected were subsequently crossed out and revised by somebody else.[2] This document fails to inspire the confidence which this Court requires before making an adjudication of contempt. Similarly disconcerting is Plaintiff's Exhibit 5, a worksheet prepared by or on behalf of the Plaintiff purporting to review copies of checks furnished by the Defendant to evidence his payment of his support obligation. Although she observes that certain copies of checks are "missing" as backup for payments which Defendant claims to have made (his recitation otherwise identifying the date and check number of the missing checks), she fails to recognize that it is her burden to allege and prove, in the first instance, the Defendant's failure to pay. The mere observation that a copy of a given check is missing, without more, does not shift to the Defendant the burden of substantiating that the payment was made. Finally, Plaintiff characterizes as rent those remittances made by the Defendant which were less than the full amount of all of his obligations to the Plaintiff. Hence, she claims that any shortfall represented unpaid child support. She would have the Court draw this conclusion notwithstanding the fact that many of the checks in question bear the notation "C.S." (which the Court interprets to mean "child support"). Under the circumstances, the Court concludes that any "short" payments must be applied first to the Defendant's child support obligation rather than any other obligation. This is so because an obligor, owing two or more debts and remitting less than the full amount of both, has the primary right to allocate amongst said debts the manner in which his remittance is to be applied. Sherwood v. Haight, 26 Conn. 432
(1857); Windsor Trust Co. v. Champigny, 105 Conn. 615 (1927); 60 Am.Jur.2d, Payment, § 94 et seq.[3] Although the recipient CT Page 15148 of such a remittance may have the right to reject the payment in the event he or she does not agree with the allocation, the Plaintiff in this case did not reject any of these payments and this Court cannot allow her to now recharacterize payments which she accepted almost five years ago and, in some instances, as far back as seven years. Although it may be that the Defendant has not honored all of his court-ordered obligations to the Plaintiff, she has failed to present sufficient credible evidence to warrant such a finding.
 2. Unreimbursed Medical Expenses
There is less confusion surrounding the Defendant's obligation to pay unreimbursed medical expenses incurred by the minor children. By way of incorporation of the Separation Agreement, the Decree provided that Defendant would "pay the cost of any deductible on his various insurance policies and any uninsured medical or dental expenses." (Separation Agreement, paragraph 17). The Plaintiff produced a list of medical bills which she has paid for treatment rendered to the children together with an indication of the amount of medical insurance reimbursement she received in respect of each such bill. (Plaintiff's Exhibit 4). The total of all such unreimbursed medical and dental expenses incurred since the date of the Decree is $6,384.27. The Defendant has produced a list of medical expense reimbursements which he has made to the Plaintiff (Defendant's Exhibit 8) and it appears that none of the remittances which he has made overlap any of the medical expense payments which the Plaintiff claims to have made without having been reimbursed therefor. Hence, the Court has before it specific information (by date, service provider and amount) regarding unreimbursed medical expenses for which the Defendant remains liable.
By way of defense, the Defendant argues that the Plaintiff, by failing to offer into evidence the specific invoices for which she is claiming a right to reimbursement, has failed to sustain her burden of proving such unreimbursed medical expenses and Defendant's non-payment of the same. Although the offering of such invoices into evidence may well have been a preferable form of proof, the Plaintiff did submit, without objection, a detailed recitation (Plaintiff's Exhibit 4) of all of the necessary information to support her claim. The Court further notes that the Plaintiff informed Defendant's counsel, on both days of the hearing, that she had with her all of the medical invoices in CT Page 15149 question. For strategic reasons or otherwise, no request was ever made during these proceedings to review the documentation in question. Moreover, the Court further notes that Plaintiff's motion for contempt (which included the instant issue) was pending for a considerable period of time prior to the hearing conducted by this Court and the Defendant had ample opportunity, had he wished to see the supporting documentation earlier, to request the same in discovery.
Based upon the evidence presented, the Court finds that the Defendant knowingly failed to pay unreimbursed medical and dental expenses as required by the Decree and that his failure to make such payments was willful.
 3. The Automatic Step-Up in Child Support.
As in the case of the Defendant's failure to pay unreimbursed medical expenses, it is equally clear that he failed to comply with that portion of the Decree which provides for his annual furnishing of financial information to the Plaintiff and automatic increases in child support based upon increases in his income. The Decree, by its incorporation of the Separation Agreement, provides as follows:
 21. The parties hereto agree that they will annually review Husband's financial condition and Husband agrees to submit to Wife a copy of his most recent W-2 Form and a recent pay stub on the anniversary each year of the signing of this Agreement. Husband agrees that if his income has increased, child support shall be increased for the coming year by a total of 10% of the amount of the increase (5% per child). The monthly increase of child support shall be calculated by dividing the annual increase into twelve equal monthly increments.
Defendant does not dispute that he neither furnished the requisite information nor paid any additional child support based upon his increased income.
Defendant raises two arguments in response to the Plaintiff's claim. His first, and primary argument, is rooted in his CT Page 15150 purported understanding of the provision in question. He contends that because he is required to submit to the Plaintiff "a copy of his most recent W-2 Form and a recent pay stub on the anniversary each year of the signing of this Agreement", the comparison to be made for purposes of determining any increase in his child support obligation is the amount of income earned for the entire prior preceding year and the amount of income earned up until the anniversary date of the signing of the Agreement (July 28th). The Court rejects this strained interpretation of the language in question.[4] The Separation Agreement (and hence the Decree) should be interpreted in a rational and reasonable manner.Hodgman v. Citizen's Public Utilities, 110 Conn. 571 (1930). The Defendant, at the time the separation agreement was signed, had been a governmental employee and remain so employed since that time. Under the circumstances, it is highly unlikely that such a comparison would ever result in an increase in the Defendant's child support obligation. The only credible and reasonable interpretation is that the comparison to be made is an annual comparison and, on this basis, the Defendant's income has consistently increased and his child support obligation should have automatically stepped up each year since the entry of the Decree. The only other defense raised by the Defendant is his claim that, because of various additional payments which he allegedly made over the years (including many not specifically related to the children), he has somehow overpaid his obligations and, therefore, there is no liability for the additional child support due under this provision. This claim, however, is problematic for two reasons. First, the Court does not find from the facts that the Defendant has overpaid his obligations. Moreover, even if the Defendant had established that he made additional, voluntary payments at other times in the past, such payments cannot be credited against court-ordered payments which he failed to make. Goold v. Goold, 11 Conn. App. 268 (1987);Zofcak v. Zofcak, 8 Conn L. Rptr. (1992). Accordingly, based upon the evidence presented, the Court finds that the Defendant failed to furnish the Plaintiff with the financial information required by the Decree and failed to pay additional child support to the Plaintiff in accordance with the formula set forth in the Decree, and that his failure to provide such information and make such additional payments was willful.
Having determined that the provision in question obligates the Defendant to make additional child support payments to the Plaintiff, there remains the question of how much is presently owed? The Plaintiff claims, according to Plaintiff's Exhibit 6, CT Page 15151 that the additional sum of $19,251.40 is due and owing as a result of Defendant's income increases through the 1996 calendar year. The Defendant contends that the sum due and owing, if any, is slightly more than half of what the Plaintiff claims. The fundamental difference between the parties in their respective calculations is Plaintiff's use of gross income figures for purposes of determining the delinquency as contrasted with the Defendant's use of net income figures in determining that figure. The Court finds that the use of net income is the appropriate measure for calculating the Plaintiff's claim. The Separation Agreement (and hence the Decree) is reasonably susceptible to both interpretations. However, it was Plaintiff's counsel (the Defendant having been unrepresented at the time of the Decree) who drafted this agreement. It is a fundamental principle of construction that, in the event an agreement is ambiguous in its terms, the ambiguity be resolved against the drafter. Sturman v.Socha, 191 Conn. 1 (1983); Cody v. Remington Electric Shavers,Division of Sperry Rand Corp., 179 Conn. 494 (1980). That would seem to be particularly appropriate where, as between the two parties, the drafter was an attorney representing one party with the other party not having the benefit of representation. The Court concludes that the sum of $10,133.50 is due and owing from the Defendant to the Plaintiff for income earned through 1996.[5]
 B. Defendant's Motions for Contempt and ComplianceRegarding the Establishment and Maintenance of the UGMAAccounts
Pursuant to the Decree and Separation Agreement, the marital residence was sold and Defendant's one-half share of the sale proceeds was to be placed in two separate trust accounts, funded in equal amounts, for the benefit of the minor children, with the Defendant to be designated as the trustee for each of said accounts. The proceeds were deposited into separate trust accounts, however the Plaintiff designated herself as the trustee of each of those accounts. She claims that her substitution as trustee in lieu of the Defendant was discussed between the parties and that the Defendant acquiesced in this arrangement. The Defendant, on the other hand, denies the existence of any such agreement, however he vacillated when asked about certain events leading up to and surrounding the Agreement which Plaintiff alleges. Based upon the credible evidence before it, the Court cannot make a finding of contempt against the Plaintiff. At the same time, however, the Court does not find CT Page 15152 that any waiver by the Defendant of his right to serve as trustee in the past should bar him from serving in that capacity in the future as contemplated by the Decree and Separation Agreement.
 C. Defendant's Motion to Modify the VisitationSchedule
As indicated earlier, the parties have resolved, for the most part, their disputes regarding visitation with the minor children. The only remaining issue involves the allocation of Christmas Day between the parties. Regrettably, the relationship between the Defendant and his daughter is somewhat strained. Consequently, she intends to spend Christmas Day with her mother and her mother's family. The Defendant recognizes and accepts her wishes in this regard, however requests that he have visitation with his son on Christmas Day. The Family Relations report recommends, inter alia, that Christmas Eve/Christmas Day be alternated between the parties annually. This recommendation, however, is not binding upon the Court. The Court has considered all of the evidence regarding this issue. The Plaintiff and children have traditionally spent Christmas Day with Plaintiff's family. The Plaintiff and the parties' daughter will do so again this year. The parties' son, who is 12 years of age, is an emotional child who has difficulty with change. The Court concludes that his best interests would not be served by separating him from his mother and sister on Christmas Day.[6]
Accordingly, the Defendant's access with Christopher over the Christmas holiday will commence at 5:00 p.m. on Christmas Day and continue until 5:00 p.m. on the day preceding his return to school.
The Court notes that one other issue appears to have arisen during the taking of testimony in this matter. Although the family relations recommendation provides for the Defendant to have two consecutive weeks with the children during the summer, and notwithstanding the parties' purported agreement with the recommendation in this regard, the Plaintiff expressed the belief that the Defendant's relationship with the children was important and, accordingly, she would be amenable to his having three weeks with the children during the summer. Accordingly, the Defendant shall have access with his son for a period of three weeks each summer, two of which shall be consecutive (with the third week being consecutive to the other two only if the parties mutually agree). CT Page 15153
 D. Attorney's Fees
Each party asserts a claim for attorneys' fees against the other. The criteria referenced in C.G.S. § 46b-62 do not warrant an award to either of the parties (their respective circumstances being somewhat similar). Apart from its authority to order the payment of attorney's fee under § 46b-62, the Court has the further discretion under § 46b-87 to order the payment of attorneys' fees to the prevailing party in contempt proceedings. Although the Plaintiff prevailed on some of the allegations regarding Defendant's delinquency, it is not unlikely that her failure to assert these claims in a more timely fashion contributed to the expense incurred by each of the parties in the prosecution and defense of these proceedings. This is particularly so in regard to Plaintiff's allegation that the Defendant was delinquent in his basic monthly child support payment (a claim on which the Defendant prevailed), as evidenced by the fact that the Defendant expended approximately $600 to obtain copies of bank records to substantiate most of the payments which he made. Under the circumstances, an order for the payment of attorneys' fees under § 46b-87 is not warranted.
 E. Waiver, Laches and Equitable Estoppel
Defendant's counsel, in closing argument, alluded to principles of waiver, laches and equitable estoppel as alternative bases for denying Plaintiff's claimed arrearages. The Court does not find that the elements of any of these equitable defenses have been established. The Defendant did not demonstrate that Plaintiff, by her words or conduct, intentionally relinquished any claims she had for unreimbursed medical expenses or stepped-up child support which Defendant failed to pay. Defendant's reliance on the doctrines of laches and equitable estoppel is similarly misplaced. Each requires a showing that Defendant was somehow prejudiced as a result of Plaintiff's (i) delay in asserting her claims (laches) or (ii) words or conduct (if any) intended to induce him to believe in the existence of certain facts and to act upon that belief (equitable estoppel). The Defendant failed to demonstrate any prejudice.[7]
 ORDER
Accordingly, it is hereby ORDERED that the Defendant be, and he hereby is, adjudged in contempt of court by reason of his (i) failure to pay unreimbursed medical and dental expenses incurred CT Page 15154 by the minor children, and (ii) failure to furnish to the Plaintiff all financial information required by the Decree and pay additional child support to Plaintiff in accordance with the formula set forth in the Decree. The Court finds that the arrearage attributable to unpaid medical and dental expenses is $6,384.27, together with interest in the amount of $3,648.80, and the arrearage attributable to unpaid increases in child support is $10,133.50, together with interest of $4,469.69, for total arrearages and interest in the amount of $24,636.26, which sum shall be repaid to the Plaintiff at the rate of $410.60 per month (on the first day of each month) for a period of sixty (60) months (such payments to be in addition to all payments of current support which the Defendant is required to make).
And it is further ORDERED, as to the trust accounts for the minor children funded with the Defendant's share of the proceeds from the sale of the marital residence, that Plaintiff forthwith cause the Defendant to be substituted as the sole trustee therefore; and that the Defendant administer said trusts in accordance with the Decree and, further, that he render to the Plaintiff, on or before the 1st day of February each year, an accounting reflecting all activity in each trust account during the year and the current balance at year end. It appears that, notwithstanding his prior request, Defendant no longer requests an accounting from the Plaintiff with respect to her handling of the account to the present time. The Court will retain jurisdiction in the event that, following the transfer of the accounts, any need arises for such an accounting.[8]
And it is further ORDERED that:
1. The parties shall continue to share joint legal custody of the minor children whose primary residence shall be with the Plaintiff.
2. The Defendant shall have access with the minor child, Erinn, as he and she may agree.
3. Father shall have reasonable rights of access with the minor child, Christopher, to include, but not be limited to:
a. three weeks during the summer school vacation, two of which shall be consecutive with the third being consecutive thereto only upon the mutual agreement of the parties, with Defendant providing the Plaintiff with 60 days notice of when he CT Page 15155 intends to exercise said visitation. If the parties cannot negotiate satisfactory dates, then the first week of visitation will take place during the last week of June and the two week visitation will occur during the first two full weeks in August. A full week shall consist of a Saturday to Saturday.
b. The Defendant shall have access with Christopher during his Christmas vacation commencing at 5:00 p.m. on Christmas Day through and including 5:00 p.m. on the day preceding his return to school.
c. Defendant shall have access with Christopher every April/spring school vacation week.
4. Plaintiff shall provide Defendant with a copy of the school calendar by September 30 of each year.
5. Defendant shall be responsible for any transportation expense including an Unaccompanied Minor fee if airline travel is utilized.
6. Until such time as Christopher is 14 years old, any airline travel shall be by direct flight if travel plans involve either the Hartford, Groton or Providence airports to the Buffalo airport.
And it is further ORDERED that each party be responsible for the payment of his or her own respective attorney's fees and neither party shall be responsible for the attorney's fees of the other.
Solomon, J.