JOHN F. CODY, ADMINISTRATOR (ESTATE OF JOHN F. CODY, JR.) *v.* REMINGTON ELECTRIC SHAVERS, DIVISION OF SPERRY RAND CORPORATION, ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and PARSKEY, Js.

Argued November 7, 1979—decision released January 29, 1980

*Steven R. Humphrey,* with whom, on the brief, was *Charles L. Howard,* for the appellants (defendants).

*G. Kenneth Bernhard,* with whom was *Keith A. Rubenstein,* for the appellee (plaintiff).

BOGDANSKI, J. The plaintiff, John F. Cody, Jr., brought an action to recover benefits under a disability plan issued to his employer, the defendant Remington Electric Shavers, Inc., by the defendant Connecticut General Life Insurance Company. The plaintiff subsequently died and his father and administrator, John F. Cody, was substituted as party plaintiff. Thereafter the parties stipulated

to the facts and the case was tried to the court. From a judgment rendered in favor of the plaintiff, the defendants have appealed.

The stipulation of facts may be summarized as follows: The decedent was employed as a full-time accountant by the defendant Remington from February 7, 1972, to May 12, 1972. Prior to that time, Remington had contracted with the defendant Connecticut General for a long-term disability plan for the benefit of its employees. In March of 1972 the decedent became ill, was hospitalized and lost a total of six and one-half consecutive days of work. From May 12, 1972, until his death in 1977, the decedent was totally disabled within the meaning of the plan. Under the plan an employee does not become eligible for benefits until he has completed three months of continuous active service prior to becoming disabled. The decedent was a full-time employee of the defendant Remington for three months and five days.

The principal dispute between the parties is whether the decedent met the condition for eligibility under the plan by completing three months of continuous active service.

The trial court concluded that the six and one-half days absence during the three month period did not disqualify the decedent from coverage.

The defendants contend that the court erred (1) in failing to incorporate in its finding a paragraph of their draft finding; (2) in concluding that the decedent qualified for coverage under the terms of the plan; and (3) in excluding testimony regarding

the underwriting considerations behind the plan's three months of continuous active service requirement.[1]

Since the resolution of the issue as to coverage is dispositive of the appeal, we will address that issue first. The defendants contend that because the active service must be continuous, it must be totally uninterrupted; that perfect attendance for three months is necessary in order to complete the three months continuous active service requirement. We do not agree.

The trial court specifically found that a requirement that a condition be continuous does not necessarily mean it must be literally uninterrupted, but that it means working with reasonable regularity. Work does not cease to be continuous because of interruptions in one's occupation due to a mere period of temporary illness such as are incident to people of normal health; to interpret the word "continuous" as requiring perfect attendance would make it theoretically possible for long-term employees to be excluded from coverage for missing one day of work during each three month period for personal reasons, religious holidays, illness or the like. The court concluded that in spite of the decedent's absence of approximately one week in a period of three months and five days, the decedent performed in the customary manner the regular duties of his employment with reasonable continuity, and therefore fulfilled the three month continuous active service requirement.

---

[1] Other assignments of error have not been briefed and are therefore considered to be abandoned on appeal. *Hutensky* v. *Avon,* 163 Conn. 433, 434, 311 A.2d 92 (1972).

We do not, however, find it necessary to construe the meaning of the word "continuous," or in fact even to make the initial determination that the word as used is ambiguous, since we conclude that the phrase "continuous active service" in the context of this case means uninterrupted employment. See Appleman, Insurance Law and Practice § 44 (1965). What the provision containing that phrase prohibits is the tacking on of short periods of employment in order to meet the three month requirement for coverage. It is not the meaning of the word "continuous" that is ambiguous but rather the policy provision in which it is contained.

It is a basic principle of insurance law that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters, and that ambiguities in contract documents are resolved against the party responsible for its drafting; the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view. See, e.g., *Roby* v. *Connecticut General Life Ins. Co.*, 166 Conn. 395, 349 A.2d 838 (1974); *King* v. *Travelers Ins. Co.*, 123 Conn. 1, 192 A. 311 (1937).

While it is true the term "active service" is defined in the policy,[2] we find that it is used in dif-

---

[2] The plan defines "active service" as follows: "ACTIVE SERVICE. An Employee will be considered in Active Service with the Employer on a day which is one of the Employer's scheduled work days if he is performing in the customary manner all of the regular duties of his employment with the Employer on a full-time basis on that day either at one of the Employer's business establishments or at some location to which the Employer's business requires him to travel. An Employee will be considered in Active Service on a day which is not one of the Employer's scheduled work days only if he was performing in the customary manner all of the regular duties of his employment on the next preceding scheduled work day."

ferent senses in different parts of the policy. For example, the provision dealing with termination of insurance states that "termination of Active Service will be considered termination of employment." Clearly, "active service" is used here synonymously with "employment." While an absence from work for whatever reason would constitute a break in "active service" as it is defined in the policy, it would hardly result in the interruption or termination of employment.

This is not to say that "active service" as defined has no applicability in construing the provisions of the policy. The policy provides that the effective date of insurance is "the date on which the Employee becomes eligible . . . provided the Employee is in Active Service on that date; otherwise the effective date of his insurance will be the date he returns to Active Service." The only logical construction that can be given to this provision is that on the last day of the waiting period, three months in this case, the employee must meet the definition of "active service" to be covered on that day. If he is absent from work on the last day of the three month period and becomes disabled before returning to active service, he will not be covered. If he returns to work, however, at any time subsequent to the end of the three month period and then becomes disabled he would be covered. To construe the policy as the defendants would have us do, would render the phrase "otherwise the effective date of his insurance will be the date he returns to Active Service" meaningless, since any absence would interrupt the running of the three month waiting period. A "return to active service" according to the defendants' line of reasoning would simply start the running of a new three month

period. Such a construction is clearly contrary to the express language of the policy that an employee will be covered on the day he returns to active service.[3]

We conclude, therefore, that the provision for three months of continuous active service should be interpreted so as to refer to three months of uninterrupted employment. It is undisputed that the decedent was employed by the defendant without any termination of that employment for over three months and that he was in active service on the last day of the three month waiting period. Had the decedent's employment been terminated in March of 1972 at the time of his hospitalization, at which time he had not yet completed three months of employment, and had he been subsequently reinstated, an entirely different situation would be presented with respect to the coverage provision.

The draft finding which is the subject of the first claim of error reads as follows: "Aside from the continuous active service requirement, the insurer has no control over coverage of employees by the Plan as no medical examination or other medical qualification is required before an employee may become eligible for benefits under the Plan." This

[3] Furthermore, in the booklet which the defendant Remington distributed to its employees describing its long-term disability benefits plan, the term active service is nowhere defined. An employee is simply informed that he will become eligible for such insurance on his first day of work on which he satisfies the following requirements: "(a) You are a full-time employee, less than 65 years old, and (b) You have completed more than 3 months of continuous active service. Part-time employees and temporary employees are not eligible for insurance under the plan." The average layperson reading such language would hardly conclude that an excused absence within his first three months of employment would cause a new waiting period to begin running.

claimed fact is immaterial in light of our resolution of the issue which we consider dispositive. Its addition to the finding would neither affect the conclusion reached by the court below nor the conclusion of this court. See *Toffolon* v. *Avon,* 173 Conn. 525, 528, 378 A.2d 580 (1977); *Lonergan* v. *Connecticut Food Store, Inc.,* 168 Conn. 122, 134, 357 A.2d 910 (1975).

Likewise, the defendants' final claim that the court erred in refusing to admit evidence of the underwriting considerations behind the requirement in question is without merit. While it is true that extrinsic evidence is admissible to assist the court in resolving the question of intent where the terms of a written contract are either latently or patently ambiguous; *Maier* v. *Arsenault,* 140 Conn. 364, 368, 100 A.2d 403 (1953); during the colloquy following the defendants' offer of proof, the defendants' attorney repeatedly stated that the proffered testimony had nothing to do with the intent of the parties.[4] Further, in view of our conclusion that it is the employment that must be continuous, the proffered testimony was irrelevant and immaterial.

There is no error.

In this opinion LOISELLE and PETERS, Js., concurred. COTTER, C. J., and PARSKEY, J., concurred in the result.

---

[4] "Mr. Humphrey: . . . I am not talking about the intent at all. I am attempting to get from this witness industry reasons that such a clause is even put into a contract no matter how it reads or whatever else. It has nothing to do with the intent of the parties, and I think that's essential, and I am not claiming anything this witness has said or will say goes to the intent."