## WENDY CARLEY *v.* LUMBERMENS MUTUAL CASUALTY COMPANY
### (4394)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued January 13—decision released March 10, 1987

*Thomas P. Heslin,* for the appellant (plaintiff).

*Snow Gene Munford,* for the appellee (defendant).

HULL, J. This case involves the question of whether the driver of an automobile, and his mother who owned the automobile, which was involved in an accident causing injuries to the plaintiff, had insurance coverage at the time of the accident under a family automobile liability insurance policy issued to the driver's father. The father was also the husband of the owner of the car.

The owner had a separate insurance policy. We agree with the trial court that under the circumstances of this case there was no such insurance coverage.

An analysis of the complicated claims of the parties is necessary in order to understand the issues concerning the automobile liability insurance policy provisions involved in this case.

The plaintiff in her complaint alleged substantially as follows: (1) On October 10, 1977, the defendant insured Frederick Surette against liability for injury "sustained by any person, arising out of the ownership . . . or use of the insured's automobile and/or any non-owned automobile"; (2) on that date, the defendant insured Irene Surette against liability arising out of the ownership or use of her Chevrolet Monte Carlo; (3) the plaintiff sued Irene and James E. Surette (son of Frederick and Irene Surette) for injuries she suffered on October 10, 1977, because of James' negligence, arising out of the ownership or use of Irene's automobile. On November 21, 1980, the plaintiff recovered a judgment of $87,123 in damages against James and Irene; (4) on October 10, 1977, James was a member of the household of Frederick and Irene and was operating the automobile; (5) under Frederick's policy the term "insured" was defined so as to include James and Irene; (6) after October 10, 1977, all three of the Surettes performed all necessary conditions and obligations under the policy; (7) the defendant paid the plaintiff the sum of $20,000, its policy limit, under the policy issued to Irene; (8) the defendant made no payment under the policy in the name of Frederick; and (9) pursuant to General Statutes § 38-175, the plaintiff, as a judgment creditor, is subrogated to the rights of James and Irene against the defendant.

The defendant filed a special defense the pertinent provisions of which are summarized as follows: (1) nei-

ther James nor Irene are insureds under the items of Frederick's policy; (2) under Frederick's policy the defendant agreed "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of: A. Bodily injury . . . sustained by any person, arising out of the ownership, maintenance, or use of the owned automobile or any non-owned automobile"; (3) an "Owned Automobile" is defined as (a) the vehicle described in the policy, (b) a trailer owned by the named insured, (c) a private passenger automobile, ownership of which is acquired by the named insured during the policy period, if it replaced the described vehicle or if the company insures all private passenger automobiles owned by the named insured on the date of the acquisition; (4) Irene's automobile is not described in Frederick's policy and is not a private passenger automobile the ownership of which was acquired by Irene or Frederick during the period of Frederick's policy as an additional vehicle; (5) a "non-owned" automobile is defined as: "An automobile . . . not owned by or furnished for the regular use of either the named insured or any relative . . . ."; (6) under this definition, Irene's car does not qualify as a nonowned automobile because it is owned by a "named insured," Irene; (7) since Irene's car qualifies neither as an "owned automobile" nor as a "non-owned automobile," there would be no coverage for her under Frederick's policy; and (8) James is not covered under Frederick's policy because he will be covered by Irene's policy. The defendant reiterated that neither James nor Irene qualified as insured under Frederick's policy.

The facts found by the court are not in dispute. The defendant paid the plaintiff $20,000, the limit under the policy on Irene's car. The defendant insured two other vehicles registered to Frederick with a policy limit of $50,000. Irene and James were relatives and residents of the household of Frederick, being his wife and

son. No claim was made by the defendant that James was furnished Irene's 1977 Monte Carlo for his regular use. Irene is a named insured under Frederick's policy. Frederick, James and Irene duly performed all of the conditions and obligations necessary under the terms of each of the policies.

The plaintiff maintains that Irene is a named insured under Frederick's policy, that the vehicle involved in the accident was a passenger automobile and an owned automobile under his policy. Irene acquired the Monte Carlo during the period of her husband's policy. The Monte Carlo was not an owned automobile under Frederick's policy. The defendant insured all of the automobiles owned by the named insureds, Frederick and Irene, when Irene acquired the Monte Carlo, but no evidence was offered that Frederick and Irene notified the defendant of their election to make Frederick's policy and no other policy issued by the company applicable to the Monte Carlo. Irene insured the Monte Carlo under a separate policy.

The plaintiff claims that the automobile was a nonowned vehicle within the terms of Frederick's policy because the defendant did not raise the special defense of regular user. The defendant did, however, raise the special defense that the Monte Carlo was not a nonowned automobile under the terms of Frederick's policy.

The court concluded that the policy language which defines a nonowned automobile as "an automobile . . . not owned by or furnished for the regular use of either the named insured or any relative . . . " does not provide coverage for vehicles owned and separately insured by one spouse. The vehicle was not only owned by a named insured, Irene, but also owned by a relative as described in Frederick's insurance policy, thereby doubly excluding it from the definition of a

nonowned automobile. The trial court concluded that Frederick's policy, therefore, did not provide coverage for the plaintiff's injuries because the vehicle involved was neither an "owned automobile" nor a "non-owned automobile" under the policy.

The plaintiff appeals from the judgment rendered for the defendant claiming that the trial court erred: (1) in concluding that the automobile involved in the accident was not a "non-owned automobile" as to James, under the terms of the insurance policy issued to Frederick, when claimed exceptions to such coverage were never properly pleaded; (2) in adding to the special defense a condition, not pleaded by the defendant, which excluded coverage for Irene and for James for the 1977 Chevrolet as an "owned vehicle" under the policy issued to Frederick; and (3) in deciding that under the circumstances neither James nor Irene qualified as an insured under the automobile policy issued by the defendant to Frederick.[1]

We consider these claims of error in the order raised.

I

The sole focus of the plaintiff's claim of error is the oft-quoted definition that a "non-owned automobile" means an automobile not owned by or furnished for the regular use of either the named insured or any relative other than a temporary substitute automobile.

The plaintiff relies primarily on *Young* v. *American Fidelity Ins. Co.*, 2 Conn. App. 282, 479 A.2d 244

---

[1] The plaintiff states issue number III as follows: "III. DID THE TRIAL COURT ERR WHEN IT DECIDED THAT UNDER THE CIRCUMSTANCES NEITHER THE SON, JAMES E. SURETTE, NOR THE WIFE, IRENE SURETTE, QUALIFIED AS AN INSURED UNDER THE AUTOMOBILE POLICY ISSUED BY THE DEFENDANT TO THE FATHER, FREDERICK SURETTE." It is undisputed that Irene and James were both "insureds" under Frederick's policy. This claim of error must be considered as raising the claim that neither James nor Irene had insurance *coverage* under Frederick's policy.

(1984), for her claim that the specific defense, that Irene's car was not a nonowned automobile under Frederick's policy, was not properly pleaded. *Young* involved a claim under General Statutes § 38-175 to recover part of an unsatisfied judgment under an automobile liability insurance policy issued to the parents of a young driver. In *Young*, as in this case, the policy covered all "relatives living at home" who drove any automobile "not owned by" or "furnished for the regular use of either the named insured or any relative." *Young* held that the regular use provision in the policy in that case is an exception to coverage which the defendant insured must allege and prove at trial. *Young* v. *American Fidelity Ins. Co.*, supra, 289.

The plaintiff claims that the "not owned by" language in Frederick's policy, being part of the same definition of the policy as the regular use provision, must of necessity be subject to the *Young* requirement that as an exception to coverage it be pleaded and proved by the defendant. The court found that the defendant did, by special defense, challenge the applicability of Frederick's policy on the ground that the Monte Carlo was not a "non-owned automobile" within the definition of the policy. Thus, the question as to whether this was the defendant's burden is not before us. "[W]e will decide the appeal on the theory on which it was tried and decided in the trial court." *L. F. Pace & Sons, Inc.* v. *Travelers Indemnity Co.*, 9 Conn. App. 30, 35 n.4, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986). We turn, then, to the narrow issue raised by the plaintiff, i.e., the adequacy of the defendant's special defense to raise the issue of a "not non-owned automobile" as to coverage for Irene and James under Frederick's policy.

We agree with the trial court that the issue was adequately pleaded by the special defense. Paragraph two of the special defense states in relevant part, "[u]nder

the father Frederick Surette's policy, the vehicle which James E. Surette was driving and Irene Surette owned, cannot qualify as . . . a 'non-owned automobile' . . . . Hence, no coverage applies under the father's policy for this accident for James E. Surette or Irene Surette."

## II

The plaintiff's second claim is that the court erred by adding to the special defense that the 1977 Monte Carlo was not an "owned vehicle" under Frederick's policy. This condition, not pleaded by the defendant, was that the plaintiff failed to comply with certain notice requirements in the policy so that Irene's Monte Carlo was not covered as an "owned automobile" under Frederick's policy. An examination of the transcript and the plaintiff's trial brief reveals that this claimed procedural error was not raised by the plaintiff in the trial court. We therefore decline to consider it. Practice Book § 4185.

We thus reach the issue which is dispositive of this case, whether the court erred in concluding that there was no coverage for either Irene or James in Frederick's policy under the circumstances presented.

The plaintiff did not claim error in the court's conclusion that the 1977 Monte Carlo was not an "owned automobile" within the terms of Frederick's policy. By its very terms, Frederick's policy under the definition of "owned automobile" provided to the contrary. The plaintiff makes no claim that the required notice was given adding Irene's Monte Carlo to Frederick's policy. Nor could she make such a claim since it is undisputed that the Monte Carlo was insured under a separate policy.

The sole issue, then, is whether the court erred in concluding that Irene and James were not covered

because the Monte Carlo was not "non-owned" under Frederick's policy. The court's conclusion is supported by the weight of authority as cited by the trial court. See *Farber* v. *Great American Ins. Co.*, 406 F.2d 1228 (7th Cir. 1969); *Boyd* v. *United States Fidelity & Guaranty Co.*, 256 So. 2d 1 (Fla. 1971).

The plaintiff additionally cites an annotation in 8 A.L.R.4th 387, and claims a lack of uniformity in deciding coverage. This annotation, however, involves the nonregular user provision of the standard family automobile liability policy involved in this case and furnishes us no guidance.

The plaintiff claims ambiguity in the definition of "non-owned automobile" in Frederick's policy. We conclude that while the application of the policy provision to any particular set of facts is complicated, it is not thereby rendered ambiguous. We will not "torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." *Downs* v. *National Casualty Co.*, 146 Conn. 490, 494–95, 152 A.2d 316 (1959).

The plaintiff claims vigorously that the trial court's judgment is against public policy in that it violates the reasonable expectations of the policyholder. In doing so, he quotes at length from the dissent of Judge Pashman of the New Jersey Supreme Court in a nonregular user case as follows: " 'A sense of ambiguity arises from a sense of surprise when its terms are applied literally, for under a literal reading, it would follow that the *named insured himself* would never be covered, even on an isolated occasion, while driving a car owned by a relative living with him. Thus a most common familial situation is excluded from the coverage of a "family" insurance policy. That exclusion so undercuts

the coverage the buyer of a policy would expect under a non-owned automobile provision as to raise a doubt the insured could have so intended. . . . Surely no one would expect every member of a household to buy specific coverage for every automobile owned by every other member of the household. The more natural expectation is that each driver would carry his own policy, which policy would be excess insurance as to his operation of the other car or cars.' " *Di Orio* v. *New Jersey Manufacturer's Ins. Co.,* 79 N.J. 257, 272, 398 A.2d 1274 (1979). We decline to be led down this judicial primrose path. It is not our function to speculate about a policyholder's expectations in the absence of ambiguity in its provisions.

The plaintiff also urges upon us the reasonable expectations test enunciated in *Cody* v. *Remington Electric Shavers,* 179 Conn. 494, 497, 427 A.2d 810 (1980). In that case, the court said: "It is a basic principle of insurance law that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters, and that ambiguities in contract documents are resolved against the party responsible for its drafting; the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." Once again, the plaintiff is bootstrapping her argument. Since we find no ambiguity in the policy provisions, we do not consider the question of the policyholder's expectations. Were we required to do so, we would note that the policy on Irene's Monte Carlo was an assigned risk policy, thus indicating that what is essentially involved in this case is an underwriting question rather than one concerning the policyholder's reasonable expectations.

There is no error.

In this opinion the other judges concurred.