[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS FOR RECTIFICATION (4/10/91), DETERMINATION OF DAMAGES (4/10/91) AND ARTICULATION (3/27/91).
REVISED MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT (126, 132)
On March 5, 1991 a memorandum of decision was filed CT Page 5914 rendering judgment on the parties' motions for summary judgment. On March 27, 1991 plaintiffs moved for articulation seeking clarification as to which counts of the Complaint and Counterclaim the decision was based upon.
Subsequently, on April 10, 1991 defendants filed a motion for recertification seeking correction of certain technical language in the memorandum of decision and the transcript.
Both motions have merit and the relief sought is appropriate. The motions are therefore granted, and the articulation and rectification are set forth in this revised memorandum of decision, together with a decision on defendants' motion for determination of damages.
An order correcting the transcript has been entered on the record.
The plaintiffs are Republic Insurance Company (Republic) and International Insurance Company (International). Defendants are North American Philips Corporation and Philips Medical Systems North America, Inc., formerly Philips Medical Systems, Inc., a subsidiary of North American Philips Corporation.
Plaintiffs instituted the action with a single count complaint, seeking a judgment declaring that neither of the plaintiffs have any obligation to provide liability coverage to defendants for any liability arising out of an accident which occurred on April 26, 1985.
On May 11, 1990 defendants filed an answer to the complaint and a counterclaim against plaintiffs. The first count of the counterclaim sought a judgment declaring that plaintiffs were obligated to "drop down" and assume insurance coverage for the April 26, 1985 accident and to indemnify defendants or the costs and expenses arising out of the accident. The second court of the counterclaim was based upon a theory of breach of contract and sought money damages.
On June 18, 1990 plaintiffs filed an answer and special defenses to the counterclaim. The pleadings were closed by defendants' reply of October 23, 1990.
On October 23, 1990 defendants filed a motion for summary judgment on the complaint and the counterclaim. Since there was no language to the contrary in the motion, it is concluded that judgment was requested on both counts of the counterclaim. Subsequently, on November 2, 1990 plaintiffs filed their motion for summary judgment, claiming that there was no genuine issue of material fact and that they were entitled to judgment as a CT Page 5915 matter of law.
As hereinafter stated, judgment is rendered in favor of defendants and against plaintiffs on the complaint and counterclaim.
The basic facts underlying this action do not appear to be in doubt and may be stated as follows:
On, or about, April 26, 1985, an employee and agent of Philips Medical Systems became involved in an automobile accident which resulted in a lawsuit (the Alexander action) for personal injuries and other damages.
At the time of the accident, defendants had in effect certain policies of liability insurance. The primary liability insurance was provided by travelers with a limit of $1,000,000 per occurrence. Over this was an umbrella level policy by Transit Casualty Company (Transit) which provided liability coverage of $5,000,000 for each occurrence.
There were two levels of excess umbrella over Transit's policy. The first level of excess umbrella coverage in the amount of $20,000,000 for each occurrence was shared by plaintiffs. Republic provided $15,000,000 and International provided $5,000,000.
The secondary level of excess umbrella coverage is not involved in this action.
In December of 1985, Transit became insolvent and unable to fulfill its obligations under the umbrella policy with defendants. Transit has made no payments towards the underlying claim.
The personal injuries resulting from the accident of April 26, 1985 were significant. Plaintiffs were invited to participate in attempts to resolve the claim in connection with these injuries. Plaintiffs declined to participate in this process.
Subsequently the Alexander action was resolved for an agreed sum of approximately $4,044,656.00. Under this agreement Travelers, defendants' primary general liability carrier, paid its limit of $1,000,000.00. The vehicle owner's and driver's liability carriers contributed a total of $400,000.00. The balance unpaid by any insurer is $2,644,656.00. Transit, the umbrella carrier, is unable to pay.
It is the position of defendants that plaintiffs are required CT Page 5916 to "drop down" and provide coverage for the balance of the settlement remaining unpaid, $2,644,656.00.
Claiming that defendants were about to commence an action to recover the above amount, plaintiffs instituted the present action seeking a judgment declaring that they have no obligation to provide any coverage to defendants for liability arising out of the April 26, 1985 accident.
Neither the liability of defendants for the accident nor the amount of the settlement have been questioned by plaintiffs. It is therefore assumed that these points have been conceded.
Defendants have filed responsive pleadings including a counterclaim requesting the court to declare that plaintiffs are obligated to drop down and assume the policy obligations of Transit, the underlying umbrella insurer, with respect to the accident in question.
The pleadings having been closed, all parties have submitted affidavits and other documents in support of their positions and have moved for summary judgment.
On motion for summary judgment, the rules require that judgment be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book 384.
An action for declaratory judgment is a special proceeding under General Statutes 52-29 implemented by Practice Book 389 through 391. Russo v. Watertown, 184 Conn. 30, 33 (1981).
Upon review of the pleadings and matters properly before the court in connection with the present motions, it is determined that there is an actual bonafide and substantial question or issue in dispute and a substantial uncertainty of legal relations which requires settlement between the parties. It is further found that the provisions of Practice Book 390(a)-(d) do not preclude the rendering of a declaratory judgment in this case.
The issue presented by the motions now before the court is whether, under the circumstances of the case, the excess insurance provided by plaintiffs should "drop down" and assume the liability coverage which Transit should have provided.
A resolution of the issue presented must start with an analysis of the applicable language of the policies in question. CT Page 5917
Under our law, the terms of an insurance policy are to be construed according to the general rules of contract construction. The determinative question is the intent of the parties, that is, what coverage defendants expected to receive and what the plaintiffs were to provide, as disclosed by the provisions of the policies. If the terms of the policies are clear and unambiguous, then the language from which the intention of the parties is to be deduced must be accorded its natural and ordinary meaning. However, when the words of an insurance contract are, without violence, susceptible of two interpretations, that which will sustain the claim and cover the loss, must, in preference, be adopted. (Citations omitted). Griswold v. Union Labor Life Ins. Co., 186 Conn. 507, 512-513
(1982).
The rule in Connecticut is that an insurance policy, like any other contract, must be given a reasonable interpretation and the words used are to be given their common, ordinary and customary meaning. Although ambiguities are to be construed against the insurer, when the language is plain, no such construction is to be applied. (Citations omitted). Izzo v. Colonial Penn. Ins. Co., 203 Conn. 305, 309-310 (1987). The liability of the insurer is not to be extended beyond the express terms of the contract. Plainville v. Travelers Indemnity Co., 178 Conn. 664, 675 (1979).
The Republic and International policies provide liability insurance in the total amount of $20,000,000.00 to defendants at the same level. Republic's policy contains endorsement S/L 169 and International's policy contains Endorsement #1. International's endorsement reads as follows. "It is agreed that except only with respect to policy period, premium and limits of liability, this policy is hereby amended to follow all the terms, conditions, definitions, and exclusions of the first layer umbrella policy as issued by Transit Casualty Policy No. UMB 950393. It is further agreed that all pre-printed terms and conditions herein are deleted to the extent that they vary from or are inconsistent with the terms and conditions of the First-Layer Umbrella."
Republic's endorsement is almost identical in language and for all intent and purpose the endorsements are the same and will be treated as such.
The plain language of the endorsements indicates that Republic and International, the second layer umbrella carriers, have incorporated into these policies all of the terms, conditions, definitions and exclusions as contained in the policy of the first layer umbrella carrier, Transit. For this reason, it becomes necessary to examine the terms of Transit's CT Page 5918 policy for an understanding of the contractual obligations of defendants.
Three provisions of the "INSURING AGREEMENTS" portion of Transit's policy shed light on the question. The first provision is under the heading UNDERLYING LIMIT-RETAINED LIMIT and is as follows: "The Company shall be liable only for the Ultimate New Loss in excess of the greater of the Insured's: (A) UNDERLYING LIMIT — an amount equal to the limits of liability indicated beside the underlying insurance listed in the Schedule A of underlying insurance, plus the applicable limits of any other underlying insurance collectible by the INSURED; OR (B) RETAINED LIMIT — The Amount specified in Item 3 I.B. of the Declarations as the result of any one occurrence not covered by said underlying insurance, and which shall be borne by the INSURED."
The second provision under the heading "H. OTHER INSURANCE:" is as follows: "If other collectible insurance with any other INSURER is available to the INSURED covering a loss covered hereunder, except insurance purchased to apply in excess of the sum of RETAINED LIMIT and LIMIT OF LIABILITY hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance."
The third provision of Transit's policy which bears upon the issue is the "LIMITS OF LIABILITY" clause. It is noted that the incorporation clause excepts from its provisions three things: "policy period, premium and limits of liability." The clause also provides that all pre-printed terms and conditions in the basic policies are "deleted to the extent that they vary from or are inconsistent with the terms and conditions of the First-Layer Umbrella."
The language used would seem to indicate an intent that all of the general operative provisions of Transit's policy should be incorporated into plaintiffs' policies. The only exceptions from incorporation would be those terms and conditions which could not logically be incorporated. The policy periods and the premiums charged, for example, would of necessity have to differ from those provisions in the Transit policy.
The limits of liability provisions would also have to be inconsistent with the Transit policy insofar as the dollar amounts mentioned on each policy. The general operative language in Transit's "LIMITS OF LIABILITY" clause, however, could be incorporated into plaintiffs' policies. In accordance with the intent of the parties, as expressed in the incorporation endorsements, it must be found that the operative CT Page 5919 language of Transit's "LIMITS OF LIABILITY" clause was incorporated into plaintiffs' policies.
Deleting the figures, the following language was incorporated into the policies issued by plaintiffs.
LIMITS OF LIABILITY
The limits of the Company's liability shall be stated herein, subject to all the terms of this policy having reference thereto.
1. Single limit any one OCCURRENCE combined PERSONAL INJURY, PROPERTY DAMAGE and ADVERTISING INJURY OR DAMAGE in excess of:
A. The amount recoverable under the underlying insurance as set out in Schedule A attached or
B. Ultimate net loss as the result of any one occurrence not covered by said underlying insurance."
Although there may be a conflict between jurisdictions which have decided the questions, the better reasoned decisions indicate that the use of the phrases "amount recoverable" and "collectible insurance", as used in the policies in question, indicate an intent that the policies should drop down.
As the court stated in Sifers v. General Marine Catering Co., 892 F.2d 386, 401 (5th Cir. 1990):
 We have interpreted the term "recoverable" to mean the amount actually recoverable from the underlying policies. In Mission Nat'l Ins. Co. v. Duke Transp. Co., we found that under Louisiana law, "[w]hen an excess insurer uses the term `collectible' or `recoverable' it is agreeing to `drop down' in the event that the primary coverage becomes uncollectible or unrecoverable", we concluded that the language in the policy at issue, "other valid and collectible insurance," provided drop-down coverage when the primary insurer became insolvent. Hence, our case law dictates that "recoverable" does not even fall within the category of ambiguous terms; its meaning is fixed in favor of the insured. Thus, as General Marine suggests, First State's coverage begins at "dollar one," absent some other provision of the policy designed to change this natural consequence.
See also Donald M. MacNeal, Inc. v. Interstate Fire and CT Page 5920 Casualty Co., 477 N.E.2d 1322, Lechner v. Schanes,429 N.W.2d 491, 494 (Wis-Aff. 1988); Central Water Systems, Inc. v. Granite State, 437 N.W.2d 496, 500 (Neb. 1989).
There does not appear to be any case law on the subject in Connecticut, but in accordance with the rule of the above cases, the language of the policies would require that the issues be resolved in favor of the defendants that the policies drop down. Griswold v. Union Labor Life Ins. Co., supra.
Even if the language of the policy were found to be ambiguous, the result would be the same.
If insurance coverage is defined in terms that are ambiguous, such ambiguity is, in accordance with standard rules of construction, resolved against the insurance company. Where the terms of the policy are of doubtful meaning, the construction most favorable to the insured will be adopted. Beach v. Middlesex Mutual Assurance Co., 205 Conn. 246, 250
(1987). To the extent that the definition of coverage in the policies is ambiguous, its scope may be interpreted to encompass the meaning reasonably attached to that definition by the insured, rather than by the insurer. Plasticrete Corporation v. American Policyholders Ins. Co., 184 Conn. 233, 236 (1981).
The policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view. Cody v. Remington Electric Shavers, 179 Conn. 494, 497
(1986). Although it might not be realistic to consider the present defendants in the same light as the ordinary unsophisticated layman, it is reasonable to assume that it was their intent to purchase a comprehensive plan of insurance protection in which the umbrella level and the first layer excess coverage would drop down and provide continuous coverage. It is doubtful that defendants would intend that a $5,000,000 gap should exist in their protection. The "amount recoverable" and "collectible insurance" language in Transit's policy and the clause in plaintiffs' policies incorporating such language in their policies would lead to an objectively reasonable expectation that the policies would drop down and protect defendants in the event Transit was unable to perform.
The expectation of coverage is reinforced by the fact that plaintiffs did not include in their policies language which specifically precluded drop down.
Plaintiffs argue that it would be unreasonable for defendants to assume drop down coverage given the discrepancy in premiums. While the premiums paid to Transit for $5,000,000 coverage was much greater than that paid to plaintiffs for CT Page 5921 $20,000,000 coverage, the initial risk was much less for plaintiffs. The court cannot speculate that the difference was so great as to be objectively unreasonable.
For reasons above stated, it must be concluded that even if the terms of the policies were ambiguous, the issues would have to be resolved in favor of defendants.
Therefore, it is found that there is no genuine issue as to any material fact and defendants are entitled to judgment.
Accordingly, plaintiff's motion for summary judgment is denied, and defendants' motion for summary judgment on the first count of the cross-complaint declaring that defendants are obligated to drop down and assume the policy obligations of the underlying umbrella insurer, Transit, arising out of the Alexander action and to indemnify defendants for the legal costs and expenses arising out of the Alexander action is granted.
The second count of the counterclaim which sounds in breach of contract claims that defendants have "incurred substantial legal liability and costs". From this language and other matters filed with the court, it appears that defendants are claiming attorney's fees, interest and other consequential damages. Defendants' entitlement to the damages sought presents questions of law and fact which cannot be resolved as a part of this judgment. Accordingly, judgment on the second count of the counterclaim is rendered against plaintiffs and in favor of defendants on the issue of liability alone. Conn. Prac. Bk. 385.
This decision is determinative of defendants' motion for determination of damages which must be denied without prejudice.
Purtill, J.