[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
On April 23, 1990, the plaintiff Carlene E. Kulisch filed a complaint alleging that on September 29, 1987, she sustained severe injuries after a motor vehicle collided into the car she was driving. She further alleges that the driver of the motor vehicle, Joselyn R. Prishwalko, carried automobile liability insurance in the amount of $20,000, but did not carry any "excess insurance or umbrella policies that would cover her liability in this matter." Complaint, 11. Prishwalko's insurance company paid the policy limits of $20,000 in full settlement of the claim. However, this amount is alleged to be insufficient to compensate Kulisch for her injuries.
At the time of the collision, Kulisch carried automobile liability insurance with the defendant, Aetna Casualty Surety Company. The policy provides for underinsured motorist coverage as required by Conn. Gen. Stat. 38a-336. The plaintiff alleges that the defendant has not paid compensation under the underinsured motorist coverage, and requests damages.
On August 12, 1991, the defendant filed its motion for summary judgment. In its Memorandum in Support of Defendant's Motion for Summary Judgment, the defendant argues that the policy had a provision requiring all underinsurance claims to be brought against the carrier within two years of the accident, but that the plaintiff failed to file a claim or suit for the benefits within two years of the accident. On this basis, the defendant concludes that the plaintiff's right to collect under the policy expired.
The plaintiff, in her Memorandum of Law in Support of Objection to Motion for Summary Judgment (Plaintiff's Memorandum), argues that (1) Section 38a-290 of the Conn. Gen. Stat. is silent as to underinsured claims and mentions only uninsured claims; (2) Practice Book 119 prevents the institution of an action that "has not yet ripened into a controversy, in the abscence [sic] of any information concerning the third party liability limits," Plaintiff's Memorandum, p. 3; (3) "an underinsured claim does not accrue until the underlying third party carrier has paid its limits, or at a minimum, when those very policy limits have been discussed" Id.; and (4) "`a contracting party may, despite his own departure from the specifications of his contract, enforce the obligations of the other party with whom he has dealt in good faith'" and that "in appropriate circumstances, a contracting party, despite his own default, may be entitled to relief from the rigorous enforcement of contract provisions that would otherwise amount to a forfeiture.'" Id. (quoting Aetna Casualty Surety Co. v. Murphy, 206 Conn. 409 (1988).
The plaintiff states that "the policy limits of the third party Defendant [Prishwalko's insurer] were not disclosed until a CT Page 10281 pretrial was held" and that "the third party carrier remained silent as to the issue of coverage in the face of a $95,000.00 demand made by the Plaintiff." Id., 4. The plaintiff further asserts that since the defendant "was consistently and constantly kept abreast of the Plaintiff's condition and continuing treatment through the submission of medical bills and reports, even after her no-fault benefits had been exhausted in May of 1989," the defendant "knew or should have known at that time, that an underinsured claim was a possibility." Id.
In the Defendant's Reply to Plaintiff's Memorandum in Opposition to Motion for Summary Judgment (Reply), it is maintained that (1) Conn. Gen. Stat. 38a-290 applies to underinsured as well as uninsured motorist coverage, and (2) Conn. Gen. Stat. 38a-336 does not require exhaustion of the tortfeasor's coverage before bringing suit to recover underinsured motorist benefits. The defendant contends rather that,
 [w]hile exhaustion of all applicable liability policies is a precondition to the [underinsured motorists] carrier's obligation to make payment, this places no restriction on the plaintiff's right to bring suit. In fact, the claimant's need to exhaust a tortfeasor's insurance policy is entirely independent of her need to bring a claim under her own policy within two years, as required by the contract."
Reply, p. 5-6
A summary judgment is granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book 384. "The party seeking summary judgment has the burden of showing the nonexistence of any genuine issue of material fact," Connell v. Colwell, 214 Conn. 242, 246 (1990), and the burden of establishing entitlement to recovery as a matter of law. Zapata v. Burns,207 Conn. 496, 502 (1988).
In this case, there is no genuine issue of material fact. It is undisputed that suit was not brought within the two year period provided for in the insurance contract. Whether 38a-290 applies to underinsured claims is a question of statutory and contractual construction. The issue of when an underinsured motorist claim must be brought goes to the construction of the insurance contract in light of our Connecticut statutes, Constitution and case law.
"The interpretation of legislation presents a question of law." Pascale v. Board of Zoning Appeals, 150 Conn. 113, 116
CT Page 10282 (1962); see also Southington v. State Board of Labor Relations,210 Conn. 549, 559 (1989). Words used in statutes "shall be construed according to the commonly approved usage of the language. . . ." Conn. Gen. Stat. 1-1; Cos Cob Volunteer Fire Co. No. 1. Inc. v. FOIC, 212 Conn. 100, 105 (1989). Where the language used by the legislature is plain and unambiguous, there is no room for statutory construction by the courts and the statute will be applied as its words direct. Kelemen v. Rimrock Corp., 207 Conn. 599, 606 (1988). When two constructions are possible, the court will adopt one making the statute effective and workable and not one leading to difficult and bizarre results. State v. Uretek, Inc., 207 Conn. 706, 719 (1988).
Statutory construction requires the court to ascertain the legislative intent in enacting the statute in question. All Brand Importers, Inc. v. Department of Liquor Control, 213 Conn. 184,194 (1989). "It is a basic rule of statutory construction that a statute is to be construed as a whole. . . ." Rustici v. Stonington,174 Conn. 10, 13 (1977). The legislature "must always be presumed to be familiar with settled rules of statutory construction and the interpretation the courts have placed upon legislation which has been enacted." Skorpios Properties Ltd. v. Waage, 172 Conn. 152,155 (1976). "[T]he General Assembly is always presumed to know all the existing statutes and the effect that its action or inaction will have upon any one of them and is presumed to have intended the result that its action or in-action produces." Plourde v. Liburdi, 207 Conn. 412, 417 (1988).
The relevant portions of Conn. Gen. Stat. 38a-290 state,
 No insurance company doing business in this state shall limit the time within which any suit shall be brought against it . . . on . . . (d) the uninsured motorist provisions of a motor vehicle insurance policy to a period less than two years from the date of the accident. . . . (emphasis added)
The plaintiff argues that 38a-290 (d) applies only to uninsured claims, and not underinsured claims. Plaintiff's Memorandum, p. 2. There is nothing in the statute that prohibits a period of more than two years for underinsured claims.
Under our rules of statutory construction, 38a-290 (d) could be construed as including underinsured claims. A statute should be construed so that no part of a legislative enactment is to be treated as insignificant and unnecessary. 84 Century Limited Partnership v. Board of Tax Review, 207 Conn. 250, 263 (1988). Here, Conn. Gen. Stat. 38a-336, which was enacted before 38a-290, provides that "Each automobile liability insurance policy CT Page 10283 shall provide insurance, herein called uninsured motorist coverage, . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles. . . ." Conn. Gen. Stat. 38a-336 (a)(1) (emphasis added). The General Assembly must be presumed to have known at the time 38a-290 was passed of the enactment of 38a-336, which specifically included underinsured claims in its definition of "uninsured" claims. See Plourde v. Liburdi, supra, 417. As discussed later in this opinion, the legislative history does not bear out this interpretation.
However, "[C]onstruction of a contract of insurance presents a different question of law for the court. . . ." Aetna Life Casualty Co. v. Bulaong, 218 Conn. 41, 58 (1991). "`An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. . . ." Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 583 (1990).
 `Where the terms of the policy are of doubtful meaning, the construction most favorable to the insured will be adopted.' . . . If, however, the words in the policy `are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than evidently intended by the parties.'
Schultz v. Hartford Fire Insurance Co., 213 Conn. 696, 702-703
(1990). "Every provision [of a contract of insurance] is to be given effect, if possible, and no word or clause eliminated as meaningless, or disregarded as inoperative, if any reasonable meaning consistent with the other parts of the policy can be given to it." A. M. Larson Co. v. Lawlor Ins. Agency, Inc., 153 Conn. 618,622 (1966).
 [W]here the terms of a contract are equally susceptible to two different meanings, that favoring the party who did not draw up the contract will be applied. . . .' The party who actually does the writing of an instrument will presumably be guided by his own interests and goals in the transaction. `. . . A further, related rationale for the rule is that `[s]ince one who CT Page 10284 speaks or writes, can be exactness of expression more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity are resolved in favor of the latter.'
Middlesex Mutual Assurance Co. v. Walsh, 218 Conn. 681, 694
(1991). This is especially true of insurance contracts, which are drawn up by the insurer. Aetna Casualty Surety Co. v. Murphy,206 Conn. 409, 415-416 (1988). "[T]he insured, who merely `adheres' to it has little choice as to its terms. . . . Standardized contracts of insurance continue to be prime examples of contracts of adhesion, whose salient feature is that they are not subject to the normal bargaining processes of ordinary contracts." Id.
"The court must interpret the insurance contract as a whole with all relevant provisions considered together." Schulz v. Hartford Fire Ins. Co., supra, 705.
 It is a basic principle of insurance law that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters, and that ambiguities in contract documents are resolved against the party responsible for its drafting; the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view.
Cody v. Remington Electric Shavers, 179 Conn. 494, 497 (1980). "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." Marcolini v. Allstate Ins. Co., 160 Conn. 280,284 (1970). Where no ambiguity is found the question of the policyholder's expectations is not to be considered. Carly v. Lumberman's Mutual Casualty Co., 110 Conn. App. 135, 143 (1987).
Further, this court takes into account "the remedial purpose of underinsured motorist coverage to protect and make whole a person injured at the hands of an uninsured/underinsured motorist," American Universal Ins. Co. v. DelGreco, 205 Conn. 178,197 (1987); and "to ensure that certain minimum protections are afforded all motorists." Roy v. Centennial Ins. Co., 171 Conn. 463,475 (1976).
Therefore, the issue is the interpretation of language in the Aetna Casualty and Surety Company automobile policy purporting to limit the time for bringing underinsured motorist claims to two years after the date of the accident. Specifically, Part F, Section 2 (General Provisions) of the policy states: CT Page 10285
 No legal action may be brought against us until there has been full compliance with all the terms of this policy. . . . All claims or suits under Part C (uninsured motorist coverage), must action be brought within two years of the date of accident.
Part C Uninsured Motorists Coverage 1a of the policy states:
 We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.
Those two sections, when read together, produce an anomalous result and in the court's opinion are ambiguous. Conn. Gen. Stat.52-584 provides for a two-year statute of limitations to bring suit for injuries arising out of an automobile accident. It is conceivable that a person injured in an automobile accident would not bring suit until the two year statutory period is almost up. In that event, he may not discover that the driver who hit him is underinsured until after two years have passed. Whereas pursuant to Conn. Gen. Stat. 14-213b(a) and 14-217, a driver involved in an accident usually knows at the scene if the other driver is uninsured. Similarly, a person may make a claim before the two years runs but may not realize that the tortfeasor is underinsured until after two years have passed because of an unexpected operation on a causally related injury. Section 38a-336 (b) (formerly 38a-175 (c)) of the Conn. Gen. Stat. provides:
 An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements. . . .
In American Universal Insurance Company v. DelGrecco [DelGreco],205 Conn. 178, 195-196 (1987), the Connecticut Supreme Court, citing comments made in the legislative history concerning the purpose of 38-175 (c), held:
 "These comments indicate a legislative intent that underinsured motorist coverage is triggered when the tortfeasor's automobile liability coverage is exhausted." (Emphasis in original).
CT Page 10286
One of the comments is right on point:
 "Senator James J. Murphy, Jr., in remarking on the same bill, stated: `[w]hat this bill does is require that hereafter, when one has purchased uninsured motorist coverage, that if that coverage exceeds any insurance coverage which a responsible party has in causing injuries, that once the liability insurance of the so-called responsible or negligent party has been exhausted, if there is additional coverage under one's uninsured motorist's plan, then payment under that program would be triggered and allow for the greater recovery of the insured. . . .' (Emphasis added.) 22 S. Proc., Pt. 5, 1979 Sess., p. 1354."
Ibid., 195.
Thus, the Connecticut Supreme Court has held that the statute of limitations runs in an underinsured case from the date of exhaustion of the tortfeasor's liability coverage. The language in the Aetna policy which the Defendant claims restricts bringing a legal action for benefits under the underinsured motorist section of the policy appears to this court to be contrary to the law in this state as determined in American Universal Insurance Company v. DelGrecco [DelGreco], supra.
Aetna argues that 38a-290 of the Conn. Gen. Stat. permits it to limit a claimant to two years from the date of the accident. The language of Conn. Gen. Stat. 38a-290 provides, in relevant part:
 No insurance company doing business in this state shall limit the time within which any suit shall be brought against it or, with respect to subdivision (d) of this section, any claim shall be submitted to arbitration on . . . (d) the uninsured motorist provisions of a motor vehicle insurance policy to a period less than two years from the date of the accident. . . . (Emphasis added)
Any construction of 38a-290 which would permit an insurance company to enforce a two-year statute of limitations for bringing claims under the underinsured provisions of its policy to two years after the date of the accident might led to absurd consequences and could amount to an unconstitutional violation of an injured person's due process rights. CT Page 10287
In State v. Breton, 212 Conn. 258, 269 (1989), the Connecticut Supreme Court stated:
 In choosing between two constructions of a statute, one valid and one constitutionally precarious, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent.
Section 38a-290 Conn. Gen. Stat. should not be construed to permit insurance companies to restrict the time for bringing claims under the underinsured motorist provisions of their policies to two years after the date of the accident because to do so would produce a result in conflict with Conn. Gen. Stat. 38a-336 (b) and 52-584. Section 38a-336 (b) mandates that no claim for underinsured motorist benefits may be made until payment under all of the tortfeasor's liability policies is exhausted. Section 52-584
Conn. Gen. Stat. clearly provides a two-year statute of limitations for bringing a lawsuit against the tortfeasor for injuries suffered in an automobile accident. If 38a-290
Conn. Gen. Stat. is interpreted to permit insurance companies to restrict the time for making claims under the underinsured provisions of its policy to two years after the date of the accident, it may well be that individuals with meritorious underinsured motorist claims are not able to perfect them due to the fact they haven't been able to satisfy 38a-336 (b) Conn. Gen. Stat., or the claim isn't perfected due to nondisclosure of policy limits within the two year period or the case where a plaintiff's claim is beset by causally related complications of the original injury enhancing the value of the claim. In Carson v. Maurer,424 A.2d 825, 830 (New Hampshire 1980), the New Hampshire Supreme Court held that, although not a fundamental right, "the right to recover for personal injuries is an important substantive right." In Daily v. New Britain Machine Co., 200 Conn. 562, 585 (1986), the Connecticut Supreme Court noted that injuries suffered in an automobile accident could be linked to the preconstitutional common law action of trespass on the case and, as such, could be considered a constitutionally incorporated common law right:
 It is clear then that the framers of the state constitution intended that our courts be available for redress for the type of injury involved here. Daily v. New Britain Machine Co., Id.
In Hartford Federal Savings and Loan Association v. Tucker,196 Conn. 172, 176 (1985), the Connecticut Supreme Court, citing Fermont Division v. Smith, 178 Conn. 393, 397 (1979) and United States v. Cruikshank, 92 U.S. 542, 554, 23 L.Ed. 588 (1876), CT Page 10288 stated:
 Due process does not mandate a particular procedure but rather requires only that certain safeguards exist in whatever procedural form is afforded . . . the Fourteenth Amendment prohibits the State from denying any person life, liberty or property without due process of law. . . .
Rendering a statute of limitations (52-584 Conn. Gen. Stat.) meaningless when applied to victims injured in automobile accidents is a denial of due process of law. The legislature may select any period of limitations which it considers reasonable, but, in doing so, it cannot render that period of limitations meaningless for those people who are bound by it.
"It is . . . a rule of statutory construction that those who promulgate statutes or rules do not intend to promulgate statutes or rules that lead to absurd consequences or bizarre results." State v. Fiano, 216 Conn. 273, 278 (1990); Texaco Refining and Marketing Co. v. Commissioner, 202 Conn. 583, 593 (1987); Sutton v. Lopes, 201 Conn. 115, 121, cert. den. sub nom. McCarthy v. Lopes, 479 U.S. 964, 107 Sup. Ct. 466, 93 L.Ed.2d 410 (1986); 2 AJ. Sutherland, statutory construction (4th Ed.) Section 45.12.
If 38a-290 of the Conn. Gen. Stat. is construed to permit insurance companies to restrict claims for underinsured motorist benefits to two years after the date of the accident, it is conceivable, as stated above, that a victim injured in an automobile accident is prohibited from bringing a claim under his own insurance policy for which he has paid premiums for underinsured motorist benefits because the statute of limitations ran before he had a claim for such benefits. In Continental Insurance Co. v. Cebe-Habersky, 214 Conn. 209, 213 (1990), the Connecticut Supreme Court held that all of the tortfeasor's automobile liability insurance must be exhausted by payment of judgment or settlements before a claimant will have access to his own underinsured motorist coverage. (Also see dissent by Shea, J., and Callahan, J., pp. 214, 215, id.). The court's decision in American Universal Insurance Co. v. DelGrecco [DelGreco], 205 Conn. 178, 195,196 (1987), also made it clear that underinsured motorist coverage is not triggered until the tortfeasor's automobile liability coverage is exhausted. Frequently, a liability carrier will refuse to disclose the amount of coverage and litigation that is necessary. In some cases, what appears to be a very small case initially develops into a very substantial case by the passage of time and the discovery of additional injuries such as a case where what was initially thought to be a neck or back sprain turns into an operated disc with extensive disability. In these situations, the events which make the case have substantial value may occur CT Page 10289 well beyond the two-year limitation period appearing in insurance policies. Both Continental Insurance v. Cebe-Habersky, supra, and American Universal Insurance Company v. DelGrecco [DelGreco], supra, clearly indicate that underinsured motorist coverage is not triggered until the tortfeasor's automobile liability coverage is exhausted. Such coverage may not be exhausted until more than two years subsequent to the date of injury. It would be unjust to allow an insurance company to prevent a claimant from exercising rights which did not arise under the policy until that time.
Moreover, permitting insurance companies to maintain such a limitation with respect to underinsured claims would encourage the filing of litigation almost immediately after automobile accidents occur, thus clogging the courts with unnecessary lawsuits.
An insurance policy is a contract and the risks covered by the policy are determined by the intention of the parties as manifested in the contract. A person bargains for a certain protection when taking out insurance, and the insurer, for a consideration, agrees to furnish that protection. Ryiz v. Federal Insurance Company, 5 Conn. App. 179, 182 (1985) Fogarty v. Fidelity and Casualty, 120 Conn. 296, 302-303 (1935). The general rules of contract construction govern when the terms of an insurance policy are to be construed. When the terms are clear and unambiguous, then the language must be accorded its natural and ordinary meaning. Ryiz, supra at 183; Griswold v. Union Labor Life Ins. Co., 186 Conn. 507, 512, 513 (1982). If an insurance policy is deemed ambiguous, an ambiguity is resolved against the insured in accordance with the standard rules of construction. Beach v. Middlesex Mutual Assurance Co., 205 Conn. 246, 250
(1987).
In a case where two provisions in a policy create two conditions precedent, an ambiguity in the policy is created. The ambiguity must be resolved in favor of the insured. Beach v. Middlesex Mutual Assurance Co., supra.
Aetna has placed in its policy two conditions precedent which must be satisfied before any claim for benefits may be made under the underinsured provisions of its policy. As noted above, it may well be impossible for a policyholder injured in an automobile accident to satisfy both conditions. Thus, the contract is unconscionable, and should be construed against Aetna.
This court finds that there is an ambiguity in the insurance contract when it is read as a whole. This court finds that Insurance Policy Part F2 and Part Cla are in conflict. One provision referring to suit being instituted within two years, the other requiring that suit not be instituted until "after the limits of liability under any applicable bodily injury liability CT Page 10290 bonds or policies have been exhausted by payment of judgments on settlements." (Part Cla, Aetna Policy).
Since these two provisions are in conflict, they should be "construed as laymen would understand it" and that the policy-holder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." Cody v. Remington Electric Shavers, 179 Conn. 494, 497 (1980). Based upon a fair reading of this contract it is this court's opinion that the expectation that a claim should not be brought until after exhaustion of liability bonds or policies is objectively reasonable.
Insofar as the applicable statute of limitations that should be applied, 52-576 Conn. Gen. Stat. provides a six-year statute of limitations after the right of action accrues, which this court finds applicable to this case.
Therefore, the motion for summary is denied.
REILLY, JUDGE