[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Plaintiff brings the instant action in four counts; the first two counts sounding in contract; The third in tortious interference therewith; and the fourth pursuant to Connecticut General Statutes § 42-110b, et seq. (CUTPA). CT Page 2080
The plaintiff entered into a certain distribution agreement dated November 7, 1983 with defendant's predecessor in interest (hereinafter "the contract"). The contract was assigned to defendant under a wholesaler agreement dated April 23, 1984. Pursuant to the contract, the plaintiff was given an "exclusive right to sell and distribute" Bachman "products" to "outlets", all as defined therein. The parties performed under the contract until August of 1993 when plaintiff sold his distributorship to one Anthony Guadagnoli.
The plaintiff brings this action to recover for two alleged breaches of contract which took place from 1991 to 1993. The first breach relates to the former Grand Central Market (now Food World) located within his territory.
The second breach relates to the opening of a BJs in Fairfield, Connecticut, also within his territory. Plaintiff claims, as a result of defendant's refusal to allow him to service Food World and BJs, the contract was breached, causing the plaintiff damage by way of lost sales commissions. The plaintiff further claims the defendant has tortiously interfered with business relationships and has violated the provisions of the Connecticut Unfair Trade Practices Act.
The defendant denies the alleged breaches and claims waiver, estoppel, laches and failure to mitigate by way of answer and special defenses.
The court, having heard all the evidence, finds that there are two bona fide justiciable issues raised. Both issues involve contract interpretation and are resolved by the application of the same principles of law pertaining to the resolution of contract ambiguity.
The evidence at trial established that, while the plaintiff was given exclusive rights to distribute within a certain defined sales territory, i.e., territory 106, the adjoining distributor of territory 107 was given the right to distribute to the Grand Central Market (hereinafter "Grand Central"), located within the plaintiff's territory. The evidence further established that the adjoining distributor, one Michael Alfano, had serviced Grand Central for more than ten years as a specifically named outlet under his contract with Bachman and the defendant. It is clear that the plaintiff understood this store to be the customer of CT Page 2081 Alfano whether by express contract reference or by conduct and acquiescence. Thus, plaintiff waived any claim to profit from Grand Central. Waiver being the intentional relinquishment of a known right demonstrated by the conduct and circumstances of the parties. Harlach v. Metropolitan Property Liability Ins. Co.,221 Conn. 185, 192 (1992).
Notwithstanding what the court finds to be a clear and intentional relinquishment of a known right by plaintiff in the case of Grand Central, the facts of the case become less clear with regard to the successors to Grand Central. The court finds the reference to Grand Central Market only in the territorial description attached to the Alfano contract. While the defendant, through Mr. Lloyd its president, argues that the reference to Grand Central is locus or site specific, the court finds same to be ambiguous at best given the context. The evidence established that the territorial descriptions in the plaintiff's contract and the Alfano contract were drafted by Lloyd.
The basic rule of contract construction is that ambiguities are to be resolved against the drafting party. Cody v. RemingtonElectric Shavers, 179 Conn. 494 (1980); Hartford ElectricApplicators of Thermalux, Inc. v. Alden, 169 Conn. 177 (1975). When two meanings are possible, an agreement is to be construed against the party who drew it. Wall v. Wason, 146 Conn. 32 (1959).
In 1991, Grand Central went out of business ultimately to be replaced by a market known as Food World in October of that year. The plaintiff thereafter made demand upon the defendant to service Food World, et seq., which demand was denied by Lloyd. In so doing, the defendant breached the contract. The plaintiff testified that his normal commission on product was 20%. This testimony was uncontroverted save for claimed set-offs due to what was described as business expense or overhead. Lloyd testified that from Food World inception to plaintiff's sale of his business, this outlet generated $17,694.61 of sales (Defendant's Exhibit 2), 20% thereof being $3,538.55.
In April of 1991, a new entity known as BJs opened in Fairfield, clearly within plaintiff's territory.
Clearly, plaintiff made a demand to service BJs which demand was denied by Lloyd. Lloyd testified that the reason for refusing to allow the plaintiff to service in this instance was that, in his opinion and perhaps in the opinion of Bachman Products, this store CT Page 2082 was not an "outlet" as that term is defined in plaintiff's contract. The court finds otherwise.
The evidence established BJs to be a store-door delivery serviced by Alfano, the owner of the adjoining territory. Quite clearly, Lloyd himself was confused as to whether BJs was an "outlet" or not, even though at trial his opinion was just as clear that it was not.
At the time the plaintiff's business sale took place, a letter was provided by Lloyd to plaintiff relative to this specific issue. That letter (Plaintiff's Exhibit D) written to assist plaintiff in the sale of his business provided:
 "I am writing to confirm that the BJ Store located in Bridgeport/Fairfield is within your geography territory. As you are aware there is a question as to whether or not it is considered an `Outlet' as defined in Article I of your distributors agreement.
 Currently that location is being serviced by another distributor. However, that location would be part of your territory if you sell your route, subject to it being considered an `Outlet' as defined in Article I of your distributors agreement." (Emphasis added).
Clearly, the defendant's own writing establishes that doubt and ambiguity exist relative to whether BJs was an outlet or not. As between the parties, this ambiguity must be resolved in favor of the plaintiff as the underlying contract was drawn by defendant's predecessor. See citations supra.
The court finds little merit in defendant's explanation of plaintiff's shortcomings as a distributor in the context of this action. No evidence was provided that defendant ever sought to terminate plaintiff's distributorship which would have been the logical step to redress poor performance. (Defendant's Exhibit 6).
The weightier evidence established defendant's breach in not allowing plaintiff to service the BJs outlet. Lloyd testified that, from the commencement of BJs to plaintiff's business sale, this outlet generated $15,649.00 (Defendant's Exhibit 3) of net sales, 20% thereof being $3,129.00.
The third count of the plaintiff's complaint alleges tortious CT Page 2083 interference with contract rights. In order for the plaintiff to prevail, he must establish the defendant's conduct was in fact tortious. Kakadelis v. DeFabritia, 191 Conn. 276. In other words, the plaintiff must plead and prove that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. Kecko Piping Co. v. Monroe,172 Conn. 197, 201-202. There must be proof of improper motive or means. The plaintiff has failed to sustain his burden and the court finds the issues for the defendant as to Count 3.
Plaintiff's fourth count alleges defendant is guilty of an unfair trade practice pursuant to Connecticut General Statutes §42-110b, et seq. (CUTPA).
In determining whether a practice is "unfair", the Supreme Court has adopted the criteria set out in the "cigarette rule" by the federal trade commission.
 "(a) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]".
A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215
(1990).
Having heard all the evidence, the court finds the plaintiff has failed to satisfy his burden of proof with respect to the facts upon which he relies in making his CUTPA claim.
Accordingly, judgment may enter for the plaintiff on Counts 1 and 2 of his complaint and the court awards damages thereon in the amount of $6,667.55 together with attorney's fees in the amount of $2,500.00. As to the claims of tortious interference and CUTPA, the court finds the issues for the defendant.
Comerford, J. CT Page 2084